1

FILED 15 OCT '24 15:47 USDC-ORP

FILED 07 OCT '24 11:13 USDC-ORP

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| David White, Pro Se. 18965 NW Illahe St, Portland, professordave.white@gmail.com OR 97229 | Case 3:24-cv-1702-AR WRIT OF ERROR COMPLAINT FOR DECLARATORY |

**$84,000 total**

503-608-7611

**JUDGEMENT, DAMAGES AMENDED BY FRCP 15**

**Plaintiff (P)**

v.

Julia Annette White (D)

21408 SE 37th St.

Sammamish, WA 98075

Defendant

Tamera Davis (D2)

of 775 Elm St in Mt. Angel, Oregon

Defendant 2.

David Smith(D3)

david@autodamageexperts.com

Defendant 3.

James Shipley, D4

OSB 964279,

jtshipley@lygoshipley.com,

2233 NE 47th Ave. Portland,

OR 97213, 503-493-8383.

Defendant D

Defendant Legal Counsel (DLC)

James Shipley, OSB 964279,

jtshipley@lygoshipley.com,

2233 NE 47th Ave. Portland,

2

OR 97213, 503-493-8383.

---

## TABLE OF AUTHORITIES

1) 18 U.S.C. § 1001 False Statements, Concealment.6
2) 18 U.S.C. 1621 Perjury…………………………………………………30
3) 18 USC 3 accessory after the fact……………………………………..5
4) 14 CFR § 47.11 - Evidence of ownership……………………………3
5) US Copyright law 17.17……………………………………………………3
6) 22–451 June 28th, 2024 Federal Case number 22–451 in Loper Bright
Enterprises v. Raimondo and Relentless, Inc. v. Department of Commerce
that all courts shall no longer function as administrative law courts.
https://www.supremecourt.gov/opinions/23pdf/22-451_7m58.pdf         6

7)     Judges Code of Conduct, Canons 2 and 3;
https://www.uscourts.gov/judges-judgeships/code-conduct-united-states-judges.......................................................................................................4

8) Oregon Supreme Court Opinion in 366OR49 2019 Marriage of
Staveland and Fisher – Division of Marital Assets…………………………9

9) Marriage of Grove, 280 Or. 341, modified on denial of reh'g, …………2

10) Marriage of Cullen, 223 Or. App. 183 (2008)……………..…………2

11) Marriage of Kunze, (2004), Kunze and Kunze 337 Or. 122.

12) ORS 107.093 C. ……………………………………………………………..2

13) ORS 107.105 (1)(d)(C). ………………………………………………...6

14) ORS 803.010………………………………………………………………….2

15) ORS 161.155. ……………………………………………………………1.

16) ORS 161.885………………………………………………………………..1

17) ORS 34.080.37) 18 U.S. Code § 4 - Misprision of felony: "Whoever,
having knowledge of the actual commission of a felony cognizable by a
court of the United States, conceals and does not as soon as possible
make known the same to some judge or other person in civil or military

3

authority under the United States, shall be fined under this title or imprisoned not more than three years, or both."................................2

18) 28 U.S. Code § 4101 The term "defamation" means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person.............................6

19) Oregon UTCR 5.100 rules for service of court documents.................9

20) Federal Rule 8 a 1-3...............................................................1

21) Pagtalunan v. Galaza, 291 F.3d 639, 642 (9th Cir. 2002):  Pagtalunan as Pro Se made numerous mistakes in filing his complaint resulting in the case being dismissed. However, upon appeal, the higher Court ruled that the lower Court was in error because they did not give allowance for Pagtalunan's lack of legal training............................1

Plaintiff likewise lacks formal legal training and respectfully requests the

same allowance the higher court said 21) Pagtalunan should have

received.

Plaintiff is advised by a team of 3 professionals, also pro se volunteer.

One is a 40-Year Retired, Federal Attorney, expert in the application of

4

Federal and Case law, environmental law in particular. Another is an

investigative journalist, providing legal research and document editing.

The 9th Circuit Court of Appeals is currently reviewing 4 cases filed by this

team for possible removal of judges in violation of 6) 12) 13) 14) and

37).

Docket # 24-5735, 24-5275, 24-5811 and 24-5735

Exhibits for this case will be filed once Pro Se Plaintiff has electronic

access. Plaintiff will also file a writ of mandamus. Plaintiffs' health is not

good. Plaintiff has a sciatic nerve issue from his lower back down his left

leg and can't walk most of the time.

Please Note:  The unusual circumstance of filing this Marriage Dissolution

in a Federal Court is explained under 6) above and "JURISDICTION "

below.  In the first instance ALL courts under the U.S. Constitution may

5

and in some cases, must try ANY case in law and equity. In the second

instance ALL remedy in the state system has been exhausted and the

Federal Court is the remedy of last resort under the 14th Amendment

guarantee of equal justice under the law.

Plaintiff respectfully requests the court to review the conclusion on page

132 written by Jeff Smith, known by most as the best Appeals attorney for

Oregon Court of Appeals. Actually, most of this document is from the

appeal Plaintiff filed in Oregon Court. Jeff Smith helped me write that

appeal.

## TABLE OF CONTENTS

I. INTRODUCTION.................................................. 7
Request to Vacate Erroneous State Court Rulings
Causes of Action/Claim for Relief                    8
Breach of Contract
Fraudulent Misrepresentation
Unjust Enrichment

II. BACKGROUND................................................. 14
Jurisdiction                                         14
Venue                                                17
Standing                                             17

6

| | | |
|---|---|---|
| Exhibit list | | 18 |
| III. ARGUMENT..................................................... | | 20 |
| Argument Against State Courts: For Judicial Fitness Review | 20 | |
| Collusion | | |
| Formatting Detail | | |
| Biased Decisions | | |
| Ignoring Federal Law | | |
| Ignoring Case Facts | | |
| Causes of Action Against State Courts | | 27 |
| DLC Unsworn Falsification | | |
| Defendant's Testimony Contrary to Fact | | |
|     Appeals Court Failure to Correct Trial Court | | 27 |
| Argument Against Defendants | | 27 |
| CAUSES OF ACTION AGAINST STATE COURTS | | 27 |
|     Depositions Evidence Contradicting Defense | | 28 |
| Dishonest Dissolution Paperwork Contradicting Defense | | 29 |
| IRS Evidence Contradicting Defense | | 67 |
| Board Meeting Evidence Contradicting Defense | | 68, 81 |
|     Financial Evidence Contradicting Defense | | 69, 84 |
|     Illegal Filings Contradicting Defense | | 70 |
|     Causes of Action Against Defendants (see Introduction) | | 7 |
| IV. CONCLUSION................................................ | | 132 |
| V. PRAYER FOR RELIEF...................................... | | 134 |

## **INTRODUCTION**

Plaintiff and Defendant were married on September 19, 1981, in Corvallis

while Plaintiff was getting his Chemical Engineering degree via the GI Bill

mostly and work-study paid for. Plaintiff worked hard in Semiconductor

Lithography where we printed the wiring patterns on Computer chips for

25 years. D was always provided with plenty of money. Plaintiff retired in

7

2011, then did some Semiconductor Lithography consulting until 2016.

Again, D enjoyed lots of money from that consulting. Now 9 years later

Plaintiff is truly retired.  In the summer of 2020 D came to Plaintiff on the

back patio of what is now Plaintiff's home and stated that she wanted a

divorce. Plaintiff requests the Federal Court to first vacate the illegal one-

sided, administrative law final rulings of August 4, 2022 in 21DR02783

and 21CN04610 & 22CN02186 on 11/29/2022; also vacate this illegal case

24CN03814.

<u>Cause of Action / Claim For Relief</u>

This Complaint has several legally recognizable claims. These show with

clear and convincing evidence that the Federal Court has jurisdiction,

(See page 25)and Plaintiff is harmed by Defendants' illegal actions. This

8

1   includes well documented 2) perjury and violation of a statutory restraining

2

3   order. This is most of what is in the video https://cctruth.org/illahe.MP4.

4

5   This is March 2022 Prior to D removing all the expensive items from the

6

7   home. She gutted it! At 1:50 in the video it can be seen two paintings on

8

9   the wall D removed which have been assessed by a Professional Art

10

11  Collector to be worth a total of two thousand dollars ten years ago. Now

12  after an illegal Writ of Execution and D removing $20,000 worth of items.

13

14  This is what Plaintiffs home inside looks like now.

15

16  https://cctruth.org/illahef.MP4. This link shows what is left in Plaintiffs

17

18  home. Now the stolen art is worth upward of $3000 during the

19

20  dissolution.

21

22  This link shows collectable art has increased in value around 140% in 1

9

year.

https://news.artnet.com/market/exactly-how-much-has-the-art-market-rebounded-from-2020-2017782

By law the value at the end of the divorce should have been split in half

by 15), by the value on August 1st, 2021, this was never in any court

hearing and when plaintiff asked about this the TCJ illegally shut Plaintiff

down. The art collector said this painter is medium collectable. The items

below justify the rulings for relief requested

in the Prayer for Relief section, per Federal Rule 20) 8 a 1-3.

Plaintiff apologizes and begs the Court's indulgence for the length of this

Complaint, which covers 6 trials over a period of a year and a half with

10

about 500 pages of transcripts.  And, as Plaintiff demonstrates, the

proceedings were riddled with unlawful and untruthful statements and

actions.   These points provide the background context in which our

Causes of Action and Prayers for Relief are based:

Breach of Contract:

Defendants are in Breach of Contract by violation of all elements of a

Cause of Action required to bring this complaint:

1. A marriage contract existed between the parties.

2. Defendant broke the contract.

3. Non-performance by Defendant and her witnesses, had no legally tenable justification.

4. Extreme emotional and physical distress has accrued to Plaintiff due to the defendants' non-performance.

5. The final ruling in 21DR02783 is not based on any of the case facts. It is based on what appears to be collusion between DLC and TCJ, well-written and well-documented perjuries, and collusion of DLC with appraiser David Smith in his 2) perjury.  It also ignores all of Plaintiff's expert witness testimony.

11

6. There are at least 20 Oregon Laws broken by TCJ in this complaint and Nine Oregon Supreme Court Opinions violated.

.

Fraudulent Misrepresentation:

According to Cornell Law, "Fraudulent misrepresentation is a tort claim,

typically arising in the field of contract law, that occurs when a defendant

makes an intentional or reckless misrepresentation of fact or opinion with

the intention to coerce a party into action or inaction on the basis of that

misrepresentation." Defendants are guilty of all elements:

1. That a representation was made

2. That the representation was false when made, and the Defendants knew that the Representation was false or that the defendant made the statement recklessly without knowledge of its truth

3. That the fraudulent misrepresentation was made with the intention that Plaintiff and the Court rely on it.

4. That the Court relied exclusively on the Fraudulent Misrepresentation of fact and law mentioned above and plaintiff suffered harm as a result of the Fraudulent Misrepresentation.

Defendants falsely testified about Facts and Law in Trials of 21DR02783. No-fault divorce is one thing, but when a party (D) takes advantage of that law by Fraudulent Representation to deny the other party of a fair and equitable distribution they have become guilty of breaking other laws cited.

12

This is well-documented in transcripts of 2) perjury and 3) recklessly

violated by a saying false things for which no proof was given in court, and

5) That the Court was 4) relying on their integrity.   These are violations of

2), 3), 37) and 38).

Thus, in the process of administering the divorce, Defendants have

violated more than 4 Federal laws, 6) causing harm to plaintiff, both

emotional distress and tangible monetary loss of $44,000.  As of 10/7/24

they have been charged with no crimes.

Unjust Enrichment:

The charge of Unjust Enrichment flows from the other two allegations

above.  Under the law, a claim for unjust enrichment has three elements:

1. The Defendant received a benefit of unequitable distribution of
   assets;

2. At the Plaintiff's expense; and,

3. Under circumstances that would reduce Plaintiff to Penury and make
   it unjust for the Defendant to retain the benefit without commensurate
   compensation.

13

4. By Oregon and Federal law, a final judgement must be fair and equitable. The final Judgement of 21DR02783 is not fair and equitable. It gives D 90% of everything and Plaintiff a mortgage with $1920 per month payment. Also $1048 a month to D forever on top of $600-$800 in bills per month

5.

## BACKGROUND

JURISDICTION

Federal Jurisdiction

The Federal Courts are the only way to correct an Administrative Court in any state, operating unlawfully under Administrative Law.  This will become obvious as we proceed.

Plaintiff appreciates the Court's detailed response and the additional light it has shed on the complex question of jurisdiction.  We trust the Court would agree that virtually all of the cases cited in the response would fall into the category of **"Exceptions, and under such Regulations as the Congress shall make" in Article III, Section 2, Paragraph 2 of the U.S. Constitution.  That phrase refers to cases for which the Supreme Court (and federal courts created under it) shall have appellate jurisdiction.**

**Any such exceptions enacted by Congress or by case law precedent are most certainly subordinate to the Constitution itself, not only to Article III, but to the 14th Amendment in particular, which states that** "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

14

It is therefore clear that Plaintiff has been **denied "due process of law."** and "the **equal protection of the laws"** by the state of Oregon.  Oregon has clearly violated the 14th Amendment, which takes precedence over any "such regulations as the Congress shall make" in Article III, Section 2. Therefore, the causes of action that the state has violated DO in fact fall under the jurisdiction of the Federal Courts and Federal Constitution, which supersedes all federal laws, federal case laws, and federal regulations. Thus, the $75,000, Rooker-Feldman doctrine, and other exceptions mentioned are all irrelevant in light of flagrant violations of the 14th Amendment that Defendants have committed, and the state of Oregon has shamelessly ignored.  It is incumbent upon the Federal Court in any such matter to step in and correct these flagrant state court errors.

This position has been fortified by the U.S. Supreme Court's Roper decision, which forbids "all courts" from allowing Administrative Law to override the U.S. Constitution and Federal laws made in pursuance thereof. Article VI, Section 2 in particular specifies that "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executive and <u>judicial Officers, both of the United States and of the several States</u>, shall be bound by Oath or Affirmation, to support this Constitution;

It is thus incumbent upon all "judicial Officers, both of the United States and of the several States" to take notice and not shirk this sacred duty as applied to the instant case, "any Thing in the Constitution or laws of any State to the Contrary notwithstanding."   All Oregon state judicial Officers have failed in this duty and while we would not be so bold as to accuse them of 17) 18 U.S. Code § 4 - Misprision of Felony:  are they not violating the spirit of this principle in the common law by allowing these violations to go unpunished?

15

According to CriminalDefenseLawyer.com, "Misprision of felony" is a crime that occurs when someone knows a felony has been committed but fails to inform the authorities about it. The crime originated in English common law and required that citizens report crimes or face criminal prosecution. (Common law is law originating from custom and court decisions rather than statutes.)  Due to the harshness of imprisoning people merely for failing to report a crime, most states chose not to include misprision of felony in their criminal laws. Instead, conduct that would fit the misprision definition is covered by other laws, such as those dealing with accomplice liability.

Oregon Appeals Court Attorney, **Jeff Smith, sums it up well:** "this divorce case is fatally flawed by incorrect rulings in 21DR02783, Wrong Opinion in A179571"  Also by the Oregon Supreme Court refusing to review and correct these unjust decisions in S070434 clearly operating as an administrative law court and not an Article III, Constitutional Court."

All Justices and Judges are sworn to uphold the State and Federal

Constitution, which they have failed to do. This ruling is retroactive because it is merely reaffirming the original intent of the Constitution of the United States, under which these cases should have been adjudicated.

Therefore, the Federal Court does in fact have jurisdiction to dismiss the illegal ruling of August 4, 2022 and resultant illegal judgement of September 1, 2022. Also dismiss the illegal rulings in A179571 and S070434.

The domestic-relations exception to Federal jurisdiction is no longer relevant under an Article III, U.S. Constitution Court, according to the recent Supreme Court ruling 6) listed above.  Federal jurisdiction extends to ALL cases of law and equity under Article III of the US Constitution section 2.

Although Plaintiff has shown in ECF1 that such exceptions are irrelevant, for the record, one defendant lives in Sammamish Washington while Plaintiff resides in Portland Oregon. Therefore, Article III paragraph 2 of the US constitution applies here also.  And, by 5) US Copyright law 17.17 the final Ruling of 21DR02783 is not based on any transcripts or exhibits. It is also well documented 2) Perjury of TCJ.  In addition, Plaintiff has suffered

16

1  extreme emotional distress from these proceedings, which would easily
2  bring the total in dispute up to $84,000.

3

4

5  <u>VENUE</u>

6

7  <u>Summary Paragraph:</u>  Venue is proper in this Court because the location of

8

9  the Court is in the same geographical location as the Illegal acts that have

10

11  taken place in the recent past.

12

13  <u>STANDING</u>

14

15  <u>Summary Paragraph:</u>  Plaintiff was and still is affected by the illegal ruling

16

17  in 21DR02783 and illegal final Judgment of September 1, 2022. These

18

19  rulings were not based on any case facts in transcripts and exhibits, nor on

20

21  relevant Federal law. This is the underlying error on which this Writ is

22

23  based.  D through DLC will most certainly respond to this complaint with a

24

25  pleading of untruthful statements and exhibits from the final ruling of the

26

17

1  Court operating illegally under administrative law and the final judgement of

2

3  21DR02783 as he did in the answering brief of A179571. These pleadings

4

5  must be regarded as unlawful under 1) ,2)

6

7  In 21DR02783 hearings from May 3, 2021, to July 26, 2022 DLC made a

8

9  minimum of 65 untruthful, unprovable statements and allowed D's

10

11  witnesses to make many untruthful statements themselves (well-

12

13  documented 2) perjury, Violations of 3). Additionally, DLC appears to have

14

15  colluded with TCJ to make a final ruling which was not based on any of the

16

17  well-documented case facts, transcripts and exhibits.

18

19

20  <u>EXHIBITS....</u>

21  Exhibit 1 is the illegal ruling of the Appeals court for A179571. August 9,
22  2023 Appeals Court erroneous opinion. This is in the background section
23  and the section name is: Appeals Court Failure to Correct Trial Court:

24  Exhibit 2 Illegal Administrative Law ruling with absolutely no actual case
25  facts!

26  Exhibit 3 December 9, 2021 settlement proposal of DLC to plaintiff. This

18

proposal would render Plaintiff destitute.  Just like Exhibit 2. This is in the
Argument section with subtitle Substantial Similarity in Copyright Law.

Exhibit 4 D initial dissolution paperwork. This is in the Background section
with subheading of: DLC Unsworn Falsification:

Exhibit 5 is the Sept 2017 board meeting of Photolithography.net

where the D removed herself, and new members were appointed per the

bylaws.

Exhibit 6 Photolithography.net corporate bylaws.

Exhibit 7 is information and IRS 1102 corporate filings in 2015 and 2016

where the Artic Fox camper, Lazy Boy chairs and window coverings were

written off legally as photolithography.net corporate assets.

Exhibit 8 Well-documented 2) perjury of Tammy Davis.

Exhibit 9 David Smith well-documented 2) perjury with Jim Shipley per 18
USC 3 accessory after the fact.

Exhibit 10 Ken Nix expert appraisal of Plaintiff's vehicles.

Exhibit 11 well-documented 2) perjury of Julia White the defendant.

Exhibit 12 Correct trial ruling based on all transcripts and exhibits.

Exhibit 13 Ally Invest incorrect illegal split of the IRA.

Exhibit 14 Illegal Writ of Execution.

Exhibit 15 Plaintiff budget is paying spousal support to D.

Exhibit 16 Limited Judgement which awarded home to Plaintiff equitably.

Exhibit 17 is December 3, 2021 disposition testimony.

Exhibit 18 is the splitting of Plaintiffs home.

Exhibit 19 Deposition testimony.

Exhibit 20 Illegal lis pendens

Exhibit 21 Customer trip for Photolithography.net

19

To summarize, Plaintiffs Complaint breaks down into two essential

components:

1. Illegalities and Irregularities in the Court itself by allowing illegal
   Administrative Law to override the facts and relevant Federal Law
   under Section III of the U.S. Constitution
2. Illegalities and Irregularities of DLC and Defendant in administering
   the dissolution of the marriage.

## ARGUMENT

## ARGUMENT AGAINST STATE COURTS

I. THE FIRST COMPONENT is the unlawful behavior of the State Court

System itself, which facilitated the second component.  With that in mind,

the legal questions to be resolved in this case are as follows:

*1.  Is it lawful for courts in Oregon to operate as part of a*

*"Good Old Boy" network with judges and attorneys colluding with each*

*other on a regular basis?*  [See A below]

*2. Is it lawful for Court Clerks at all levels to scrutinize Pro Se filings*

*far more rigorously than those of any Legal Counsel for the same types of*

*nominal, formatting errors?*  [See B Below]

20

*3. Is it lawful for a Trial Court Judge, Appellant Justice, Ethics*

*Commission General Counsel, or Judicial Fitness Justices to show clear*

*bias against a Pro Se litigant?*   [See C below]

*4. Is it lawful for a state Trial Court Judge to make a final ruling in a*

*dissolution or any case, by functioning as an Administrative Law Court to*

*overrule Federal law  under Article III of the US Constitution Court System?*

[See D below]

*5 Is it lawful for a Trial Court Judge to make a final ruling in a*

*dissolution or any case by functioning as an Administrative Law Court to*

*ignore virtually all case facts under Article III of the US Constitution Court*

*System?*   [See E below]

Following are examples relevant to these questions from the many other

filings in S070484 since the original Petition for Judicial Review.

A. Collusion: On September 28, 2023 Plaintiff filed Addendum to

Petition for Review. This document shows proof of DLC calling The

Oregon Supreme Court "a Joke!", demonstrating the undue familiarity

and consequent favoritism that pervades the Oregon Court System.

This is a violation of 18) 28 U.S. Code § 4101.

For example, DLC colluded with David Smith to create the fraudulent

vehicle appraisal and provide Plaintiff's vehicle values to DLC 1.5 months

prior to actually performing the appraisal.  When the appraisal was finally

made, the results were well below professional standards and made to

conform with the predetermined result, thus requiring Smith to commit

2) Perjury in trial, which is well-documented in the transcripts.

Defendant, Defendant's Sister, and D's Vehicle Appraiser were all involved.

The latter colluded with DLC (18 USC 3 accessory after the fact) and gave

him vehicle values a month and a half prior to performing any Appraisal.

The Appraisal itself did not meet professional standards. Together these

defendants increased Plaintiff's side of the ledger by over $40,000 in

21DR03783.  Should such a substantive error, based on a felony of 2)

perjury, be allowed to stand with no legal challenge?

B. Formatting:  On October 5, 2023 Plaintiff filed a Petition for Judicial

Review WRIT, which most likely should have been a motion.  Plaintiff Pro

22

Se humbly begs the indulgence of the Court.  Meantime,

DLC filed an illegal WRIT of Execution on May 18, 2023. This

WRIT had no certificate of Service as required by Oregon19) UTCR 5.100.

In addition, DLC failed to serve it to Plaintiff seven days in advance

of Trial Court Filing as required by Oregon 19) UTCR 5.100.  Moreover,

DLC did not allow Plaintiff to use the Challenge Writ Law.  Finally,

the service on June 9, 2023 was a plain photocopy instead of the

required Court Judge Signature original or Court Certified and

stamped printout required in ORS 34.08.  By way of comparison

with Plaintiff, why are these more serious breaches of legal procedure

tolerated? Plaintiff witnessed DLC making many more such serious

mistakes of this nature than Plaintiff, without penalty.  As an example, a

recent filing in the local court was rejected by the court clerks in

Washington County simply because Plaintiff extended the line for the TCJ

to sign across the entire page instead of a short line.  By way of contrast,

DLC filed on May 18, 2023 in the same court an illegal writ of execution
which contained no certificate of service, in accord with Oregon UTCR

5.100. It also violated three other

Oregon laws, yet was accepted by the same court clerk's office. Is this an

23

even-handed application of Oregon Law? Or is it illegal Administrative

Law?

C. Bias Against Pro se Plaintiff:

As an example of the pervasive bias in this case, the TCJ in 21DR02783

denied every legally correct motion Plaintiff filed, normally without reading,

and within minutes of receiving them.

On October 16, 2023 Plaintiff filed a motion for a Court Order

affirming that photolithography.net is *not* a marital asset. Plaintiff and

Defendants both testified to this in Deposition on December 3, 2021 for

21DR02783, yet this substantive error remained uncorrected.

Consequently, on many subsequent occasions in transcripts,

DLC untruthfully stated otherwise (more violations of 1)

and TCJ accepted his word contrary to sworn testimony of Plaintiff. Is it

legal and proper for these demonstrably false and unprovable statements

of DLC to stand uncorrected by the Court?  Is this biased behavior not an

egregious miscarriage of justice.

24

D. <u>Final Ruling Ignores Federal and State Law by illegal Administrative Law:</u>

Plaintiff filed a Petition for Review of a dismissal by the Ethics Commission on November 9, 2023.  The Ethics Commission complaint against DLC was more than 400 pages in length. It documented innumerable false statements by DLC 1) which cannot be proven, due to the three class C felonies of 2) Perjury committed by D and her witnesses. It also contained an image from an email where DLC referred to the Oregon Supreme Court as "a joke." This is a violation of 18) 28 U.S. Code § 4101. Should the Oregon Ethics Commission be permitted to continue with such illegal prejudice and bias on behalf of an Attorney and against well-documented complaints put forth by Plaintiff?  The Oregon Ethics Commission must also operate under Article III of the U. S. Constitution.

On December 4, 2023 PLAINTIFF filed three well-documented Class C felonies of 2) Perjury based on trial transcripts and exhibits in 21DR02783.  These charges of 2) perjury were filed against Defendant.

On December 18, 2023 PLAINTIFF filed a MOTION TO

CHANGE ALLY INVESTMENT SPLIT. The split of the Ally Investment was

not legal. DLC asserted that the proper value to split was

$234,000. TCJ agreed even though PLAINTIFF proved that the IRA

end-of-month values were effected by $51,000 due to stock market

changes, not withdrawals of POR. This is in violation of Oregon

Supreme Court Case 8) 366OR49 2019 STAVELAND and FISHER.

In this case the Oregon Supreme Court ruled that variable assets

must be split at case-ending values. Therefore, Defendant owes

Plaintiff $17,000 to Plaintiff's IRA.  Here again the Court and DLC colluded

to use illegal Administrative Law to overrule Federal law under the U.S.

Constitution.

E.  Final Ruling Ignores Case Facts under Administrative Law:

Furthermore, TCJ accused Plaintiff of being untruthful without evidence in

the illegal, administrative law ruling of August 4, 2022.  His accusations

were based on his naive acceptance of DLC's unprovable, untruthful

statements and illegal errors of DLC, D and her witnesses.

26

Thus, the final ruling (August 4, 2022) was not based on any

case facts in transcripts or exhibits.  They were virtually all simply ignored

by the Court.  Plaintiff will upload the transcripts

once Plaintiff has electronic access.

### CAUSES OF ACTION AGAINST STATE COURTS

## DLC Unsworn Falsification:

In February, 2021 Defendant hired DLC, who has shown himself adept in manipulating administrative law to flaunt and break the applicable federal laws, leading to this Writ of Error.

D's dissolution filing (Exhibit 4) consisted of about 80% 1), and 3).

## Defendant's Testimony Contrary to Fact:

Exhibit 4 contains two sworn affidavits of Plaintiff's sister and good friend who will testify that what D said in Exhibit 4 is mostly untruthful. Throughout our Marriage we were Christians and would not lie.

We taught our two children not to lie also. However, during the trial of

21DR02783, D and her witnesses did little but make untruthful statements

one after the other. The TCJ had no concern about this whatsoever. When the trial was over the final ruling declared Plaintiff to be untruthful, while D and her witnesses were truthful, contrary to overwhelming evidence.

27

## Appeals Court Failure to Correct Trial Court:

For this reason, Plaintiff appealed the judgement based on a final ruling which is not based on any case facts or exhibits. The Oregon Appeals court is charged with correcting this kind of trial court malfeasance, but they refused to do so. Appellant (Plaintiff) wrote an Opening Appeal and hired Jeff Smith, the best Appeal Attorney in Oregon, to help Appellant write the opening brief. Since Appellant had no money Plaintiff had to sell his family's tandem axle 1967 farm trailer to purchase the transcripts. The opening brief presented well-documented issues of law breaking and DLC's untruthfulness.  Also DLC's collusion with the Trail Court Judge (TCJ). DLC wrote an answering brief for Defendant with additional violations of 3), 1) and 2). In addition, the Answering Brief contained the final ruling and judgement. The appellant then wrote a Response Brief which explained this in detail. The Appeals Court opinion also ignored all the evidence and simply confirmed the Trial Court distortion of the truth. Jeff Smith agreed that, "it was wrong." Plaintiff then moved the case to Oregon Supreme Court where DLC called The Oregon Supreme Court "a joke". The Oregon Supreme Court refused to take the case and then also denied a Motion for Judicial Reconsideration. This is a violation of 18) 28 U.S. Code § 4101.

On June 9, 2023, an illegal Writ of Execution (Exhibit 14) was illegally served on Plaintiff's home, after which D and DLC removed fixtures, corporate assets, and inherited items. The Writ clearly broke three Oregon laws, which TCJ completely ignored. Therefore, Plaintiff presents this Pleading to move to Federal Court where he is hopeful that the facts will finally be considered, leading to a just and fair determination.

## ARGUMENT AGAINST THE DEFENSE

**II**. THE SECOND COMPONENT of Plaintiff's Complaint consists of six Causes of Action filed against the Defense.  They are summarized as follows:

28

## A. Depositions Evidence Contradicting Defense:

The depositions (Exhibit 17) of December 1, 2021 prove the camper, Lazy

Boy, and office blinds are owned by Photolithygraphy.net, and are not

marital assets. This is 4) evidence of ownership.

In 21DR02783 hearings from May 3, 2021 to July 26, 2022 DLC uttered a

minimum of 65 untruthful, unprovable statements and allowed D's

witnesses to tell untruthful statements themselves (well documented

2) perjury, 18 U.S.C. § 1001 False Statements, Concealment, 3)

2( Perjury and 18 USC 3 accessory after the fact).

Incredibly, TCJ then accused Plaintiff of being untruthful without evidence

in the illegal Administrative Law ruling of August 4, 2022, and accepted the

unprovable, untruthful statements and illegal errors of DLC D, and her

## B. Dishonest Dissolution Paperwork:

Defendant (D) filed for divorce on February 11, 2021, and hired Mr

29

1   Shipley as Legal Counsel. The dissolution paperwork was drawn up.

2

3   The dissolution paperwork (Exhibit 4) was comprised mostly of 1) 2) and 3,

4   with Defendant playing the "Victim." DLC himself admitted that the final

5

6   ruling in 21DR02783 was a carbon copy of a December 9, 2021 Proposal

7

8   he sent to Plaintiff's previous legal counsel

9

10  in 21DR02783, which would leave Plaintiff penniless. This was rejected in

11

12  December, 2021.  Virtually, nothing in the final ruling of 21DR02783 is

13

14  even close to fair and just. It leaves Plaintiff with only $29,000 in his IRA,

15

16  no ability to work, and still owing $1048 a month to

17

18  Defendant who already has $3000 a month in disposable

19

20  income. She also has around $450,000 in cash for investing, easily

21

22  making $30,000-$60,000 a year in investment gains. D on

23

24  Review has a home with $260,000 in equity. How is $450,000 plus

25

26  $3000 a month from her job and $2000 a month from investments even

30

1

2 close to fair and just, compared to $260,000 in equity, $78 a month in

3

4 disposable income and $29,000 in an IRA?

5

6 Plaintiff has only $78 in disposable income per month and can't get a job

7

8 which will allow him to pay any Spousal Support. Plaintiff has applied for 45

9

10 Jobs and received 45 rejections.

11

12 Dishonest Dissolution

13

14 The ethics complaint against DLC filed with OSB, 964279 contains

15

16 many instances of violations of 19) UTCR 5.100 (1) and (2), ORS 162.885,

17

18 and 15) ORS 161.155 for colluding with David Smith's inaccurate

19

20 appraisals and receiving the vehicle values 1.5 months prior to the

21

22 Appraisal being conducted. However, the Ethics Commission General

23

24 Counsel dismissed the case with no legal basis.   When David Smith

25

26 pleads guilty for his Class C Felony, DLC will lose his bar license for

31

violation of 16) ORS 161.885.

Here is an email sent to DLC on Monday 7/29/2022:

Mr. Shipley, next Monday I am moving the divorce to Federal Court with a

Writ of Error.  That includes also the well-documented Perjuries of your

client, her sister, and David Smith. As you know, in County Court it would

have been one Class C felony for each of them had you proceeded with

professional integrity.

But since you insisted on perverting justice under Administrative Law, the

penalties for you and your clients are elevated substantially.  In Federal

Court the 2 felonies

1. (18 U.S.C. § 1001 False Statements, Concealment, 3)

2) Perjury for your clients, her witnesses, and yourself with 18 USC 3,

accessory after the fact, each carry a fine AND 5 years in Jail.  This is 10

32

1

2   years for your client and her witnesses. Your very close associate,

3

4   assistant District Attorney in

5

6   Washington County could have gotten them off relatively easily with just a

7

8   fine. However, due to DLC, D and D's witness criminal malfeasance and

9

10   utter disregard for professional ethics I will ask the Federal Court to

11

12   adjudicate and prosecute you and them to the full extent of the law.  I will

13

14   ask the court for full adjudication, with referral to the FBI for criminal

15

16   investigation and to the Federal Prosecutor in Portland for criminal charges.

17

18   I already have these documents and the summons written and ready to file.

19

20   In the court I will upload your client's untruthful dissolution filing, the illegal

21

22   Writ of Execution you prepared, and the Photolithography assets as a

23

24   non-marital asset.

25

26   The time for your client to negotiate is now, but the clock is ticking.

33

1

2   Then DLC asked what Plaintiff wanted.

3

4   Then Plaintiff responded with: Not a threat. A promise.

5

6   "To remove $44,000 from my side of the ledger which didn't belong there

7

8   and was there because of the 2) perjury of your client and her witnesses.

9

10  Exhibits 8, 9 and 11.

11

12  "To split the IRA and grandkids money by Oregon Supreme Court 8)

13

14  Staveland and Fisher. They must be split at the ending value dated August

15

16  1st 2022 The IRA was just under $200.000 Your client must transfer

17

18  $13205.74 to Plaintiffs IRA. The Grandkids money total was 15,689.88

19

20  after withdrawals and paying federal and state taxes we each get

21

22  $6454.50, Therefore $13205.74- $6454.50=$6721.24 put back into my IRA.

23

24  "Bring back everything from your Illegal Writ. Those were fixtures, stuff from

25

26  my father's estate, and corporate assets we both testified in depositions

34

1

2   about. This included but is not limited to the stereo and speakers installed

3

4   and working like before, Refrigerator hooked up. Patio Umbrella, Lazy Boy

5

6   chairs and air compressor.

7

8   "It was illegal for Administrate Law Judge Bailey to award your client

9

10  spousal support. On the other hand, it is no imposition for your client to pay

11

12  me $1000 per month until she is 70 years old, as restitution.

13

14  "Your client must write a letter to all our friends and explain that she was

15

16  untruthful in saying a doctor ordered that I couldn't have guns.  She must

17

18  also make the same confession to the place where she illegally took the

19

20  guns to be destroyed."

21

22  High School Textbook published here:
23  https://rosedogbookstore.com/climate-crisis-changed-the-
24  intergovernmental-panel-on-climate-change-ipcc-reports-are-deliberate-
25  science-fiction-1/?showHidden=true

26

35

TV interview for the college textbook for environmental science on cctruth.org taught at many Colleges now..
https://www.youtube.com/watch?v=5XlSZTuOtks

Podcast interview with Tom Nelson for the college textbook we published on cctruth.org
https://twitter.com/TomANelson/status/1740356736643400074

International Journal of Uncompromised Science

Chief Editor ijust.org

However, DLC replied on 7/31/2024.

My client rejects your proposal.  Go ahead and file.

Jim Shipley

This exchange proves DLC doesn't operate as a professional attorney

warning his client of the strong case against her under Article III of the U.S.

Constitution, when the flimsy veil of Administrative Law is stripped away to

expose her (and his) crimes.

He will deservedly loose his bar license in Oregon with a felony charge and

easy conviction when and if the facts are reviewed and taken seriously.

Refusing to acknowledge these neglected facts are grounds for the TCJ to

36

1

2  lose his bar license, which is well within the power of the Federal Court to

3

4  effect.

5

6  However, the battle is being fought after the fact of the divorce being

7

8  finalized and the support that was established by Judge Fun was

9

10  temporary with him saying, "very temporary."

11

12  How long before someone in the justice system says, "Hey wait a

13

14  minute. The Plaintiff makes a compelling point. Any ruling which

15

16  isn't based on all case facts is not a legal ruling and can't be

17

18  accepted without Appeal Court review. This is a court of

19

20  truth and justice. We don't allow lying and subverting the truth for

21

22  financial gain." False testimony during trial may not be seen as the

23

24  felonious crime of "2) perjury", which most people would read into it by

25

26  the meaning of the word:  to lie under testimony to avoid the negative

37

legal consequences of illegal behavior and to avoid a financial

judgement against them. Is it also to be concluded that this court

finds it not worthy to understand that these constantly repeated false

statements created a financial disaster for the Appellant and enriches

the D beyond a fair and equitable measure, not only of

what the Plaintiff can pay but, way outside of the bounds of just and

equitable and even the realm of human compassion?

Plaintiff may have made marital mistakes, but he's been fair

minded and honest throughout this trial and no evidence has been

shown to the contrary except for unfounded allegations by

DLC. Does the Federal Court need to make a fair minded Plaintiff

homeless, broke and without even a vehicle to live in, while the D, fully

38

1    employed, is able to buy a house with the money Appellant gave her, or

2

3    live comfortably with D's daughter, and empowered to demand $1,000 a

4    month from the, then, destitute Plaintiff? If we keep giving DLC the right to

5

6    legally make untruthful statements, about the Plaintiff, about the facts of the

7

8    case, about the things the law says, and now about the Social Security,

9

10    what justice are we here to uphold? That's what this Federal case is all

11

12    about. These subversions of truth by the D's case are so numerous that to

13

14    make a judgement for the D would negate the Federal Court's function of

15

16    correcting errors in the legal process. Page 3 Paragraphs 1 and two in

17

18    Exhibit 3 Are not based on testimony. Plaintiff testified he had applied for

19

20    35 Jobs and can't get one. Also, Plaintiff doesn't do

21

22    RV electrical anymore. Plaintiff is 66 years old and can't crawl around RV's

23

24    anymore.

25

26    Plaintiff only had $2093 from SSI not $2243, another number DLC

39

arbitrarily and untruthfully made up. Also, it was illegal for Judge Fun or the

Trial Court Judge to award

spousal Support from Appellant to D.

Page 3 Paragraphs 4 and 5, Exhibit 2 contain more incorrect statements

based on untruthful statements and D's Legal Counsel's incorrect untruthful

statements as outlined.

Summary:

DLC's incorrect unprovable statements and    when Plaintiff asked

for proof on numerous occasions DLC has provided none. Plaintiff has on

many occasions proven

DLC has made incorrect untruthful statements and Plaintiff has sent proof

of this to him and the TCJ many times, as Plaintiff is right now, and these

requests have been ignored.

40

1

2 The Artic Fox camper owned by Photolithography.net since 9/2015

3

4 Exhibit 4 is 2015 C Corp federal taxes filed where the camper, Lazy-

5

6 Boy chairs, window coverings in Appellant's home and garden shed

7

8 were written off and accepted by the IRS. Now over 7 years later it

9

10 can't be changed. Exhibit 5 is the Sept 2017 board meeting where the

11

12 Petitioner removed herself and new members were appointed per the

13

14 bylaws. Her shares were split to the remaining board members per

15

16 the bylaws. This corporation has not been a closely held company

17

18

19 since 9/2017. The Oregon law requires a company to be closely held

20

21 to be included as a marriage asset. The Artic Fox camper from day 1

22

23 was used for a 5-month contract with FLIR Wilsonville. Semiconductor

24

25 consulting requires the consultant to stay very close to the factory

26

41

1    location. The Lazy Boy chairs were used for consulting with remote

2

3    customers using ZOOM. The light coming through the patio door

4

5    disturbed the conversations with customers because the appellant

6

7    could not see the screen very well. Appellant also served customers of

8

9    Calvari Semiconductor, Crocus Nano Electronics, Opto-Diode, Paul

10

11   Corp filter work, UCSB Nanofab, UMC and Verivanti.

12

13   Exhibit 6 is the bylaws of Photolithography.net consulting.

14

15

16   Exhibit 7 is a customer trip report from 2016 which was the last work

17

18   the company performed. Exhibit 14 and 15 are the Ds and

19

20   appellant's deposition on 12/1/2021. This was completely ignored by

21

22   Trial Court Judge. Both appellant and D testified the

23

24   camper, Lazy-Boy chairs and garden shed are owned by

25

26   Photolithography.net. Exhibit 15 from Page 21, line 22 to Page 25, line

42

1

2  [Dishonest Dissolution]

3

4  The trial court erred by failing to properly value and consider the enhanced

5

6  earning capacity of D, thus skewing the property division in a manner that

7

8  was inequitable under every circumstance.

9

10  Trial Court Judge and previous Judge Fun broke Oregon law 130 ORS

11

12  107.105 (1)(d)(c) Maintenance Spousal Support.   13) ORS

13

14  107.105(1)(d)(C) contains a non-exhaustive list of factors that the court

15

16  should consider in making a spousal maintenance determination. Those

17

18  factors are:

19

20  (I)    The duration of the marriage; Here, 41 years, including about

21  one after separation.

22

23  (II)    The age of the parties; D is 62 and Plaintiff is 66

24  years of age.

25

26  (III)  The health of the parties, including their physical, mental and

43

1

2    emotional condition; the D is in good physical condition, working in a

3

4    physical job (which she has stated she loves) and has no impediments to

5

6    working full time. On the other hand, Plaintiffs' opportunities for

7

8    employment are limited because he is 66 years old and has been out of the

9

10   job market for more than a decade. Furthermore, Plaintiff has been

11

12   diagnosed as Narcissistic Delusional by a Veterans Doctor. He is currently

13

14   seeing four medical doctors for body issues which prevent him from

15

16   working. Plaintiff now and for the past year and a half has

17

18   a bad sciatic issue and can barely walk.

19

20   Furthermore, Respondent testified in deposition he receives SNAP benefits

21

22   for food.

23

24   Also Christine Knutson from Rick Hug CPA's firm testified transcripts

25

26   February 4th page 101 line 11 to page 126 line 13 plaintiffs' income is

44

almost the same as expenses. His $78 of disposable income includes the

SNAP benefit amount. Therefore, he can't be made to pay any spousal

support or anything else.

a.    As a matter of fact, Plaintiff has 2 doctor appointments

the week of January 16, 2023 D has at least $3000 in disposable income

per month based on her Uniform Support Document.

Plaintiff has $78 based on his Uniform Support Document

Whether the Trial Court's final ruling was based on trial facts or

collusion with DLC. The trial court failed to take into account the

enhanced earning capacity of D. She has a job, she testified she loves and

makes $3600 a month being a nanny while living free and taking care of

our grandchildren at our Daughter's

home in Sammamish Washington. In D's testimony she said she would pay

45

$500 a month rent, however, as of the last bank statements in her

discovery. Plaintiff can find no evidence of this. DLC has provided no proof

that this seemingly false statement has been accomplished.

Plaintiff presented substantial evidence he has no money nor job to pay

spousal support. Christine Knutson CPA testified in February 4th 2022

hearing, "Plaintiff has $78 in disposable income per month."

Plaintiff testified he had applied for 35 Engineering jobs and was turned

Down for every application, because of his age.  Updated to now 45

Applications with the same result. D testified she has a job making income.

The Uniform Support document (USD) shows $3600 a month as a Nanny

with $3000 a month in disposable income.

Document (USD) D submitted in Trial court was untruthful.

It was claimed that USD had $3600 in income and expenses as if she

46

owned a home and had a house payment and bills. However, she is living

free and maybe pays $500 a month rent she testified about. However, the

most recent bank statements Appellant has from Respondent show

no $500 monthly payment. Appellant has asked for more

recent statements however he has received none.

Respondent testified in 12/1/21 Deposition our son would invest what is left

of the $285,000 after the divorce is finalized. Appellant previously taught

their son his thirty years investing experience. Their son will easily make

Respondent between 12% and 20% per year. With 12%

she will make $24,000 a year on a $200,000 investment. This is

$2000 a month increasing her monthly disposable income to $5,000.

As an example, Ready Capital (RC) currently has a 14.3% dividend

for the last 10 years. It is a REIT which is a Federal designation, and

47

they must give 90% of their profits as dividends. It ranges from $7.80-$14

per share.  It's currently at $8.66 and on its way down, with a high

of $13.50. In 2021 our son Bryan had shares of RC. If he invested

$200,000 in September 2022 as D testified he would. Then

purchased RC at $10, D would have had 20,000 shares. With those

shares she would have received $8400 in dividends at the end of October

and then sold at $13 she would have made $3 a share in 6 months and

$60,000 added to her account. Bryan is an

expert at this. DLC and TCJ already split with an illegal supplemental

judgement Plaintiffs IRA, $117,000 to D and only $83,000 to Plaintiff

because TCJ accepted DLC's incorrect, untruthful, unprovable statements

in trial. The illegal one-sided ruling and judgement leaves Plaintiff with only

$29,000 remaining in his IRA. This is because of the non-expert vehicle

48

1

2   appraisals and untruthful statements of DLC which will remove another

3

4   $54,000 from Plaintiffs IRA. Using the same 12% calculation, Plaintiff may

5

6   take only $290 a

7

8   month and has a negative – $922 a month disposable income. Exhibit

9

10

11   19 is Plaintiffs budget for 2023 which shows how paying spousal support of

12

13   $1000 a month, Appellant will be at -$6000 by July 1, 2023. This is neither

14

15   fair nor equitable. D is 62 years old.

16   She can apply for Social Security and receive around $1200 a month.

17

18   Increasing disposable income to $6200 a month.

19

20   Plaintiff's 2023 budget is at Exhibit 19. Plaintiff has to fight this unfair

21

22   judgement because it will leave him destitute and homeless, and without a

23

24   vehicle to live in.

25

26   Not only that, but Plaintiff wouldn't be able to rent a home or even a share a

49

rental because he wouldn't be able to show any assets on his

credit report. Furthermore, defaulting on the home loan will drive his

credit rating so low he won't be able to live anywhere. However, living in

the home is the lowest cost alternative. No other place in the Portland area

would allow anything close to his home for less money. That's what Plaintiff

worked his whole life to earn,

and when the divorce happened, took a loan to pay off the D for her share

of the value. If this judgement goes through, Plaintiff won't be able to pay

that loan and will lose the house. The illegal Lis Pendens prevents him from

selling his home and moving. Even a job of $25 an hour will not allow

Plaintiff to pay spousal support. This is because his Social Security will be
reduced dollar for dollar.

On a yearly basis he would only net a few

1 thousand dollars extra a year. Not enabling Plaintiff to pay spousal

2

3

4 support. This was explained in detail to TCJ and DLC many times,

5

6 however, TCJ

7

8 believes DLC's untruthful statements. Every judgement must be fair and

9

10 equitable. The limited judgement which split the family home 50:50 was fair

11

12 and equitable. Plaintiff asks the

13

14 Federal Judge to recognize the 50:50 split of the home as a

15

16 precedent and definition of fair and equitable for the purpose of this

17

18 complaint and further trial judgements. The rulings and judgements

19

20 except the judgement which split Appellant's home from

21

22 21DR02783 are not fair and are inequitable, causing an unnecessary

23

24 financial hardship on a handicapped, unemployable senior

25

26 citizen who is only fighting, not to fight the D's right to fair value in the

51

marital assets, but to make them equitable so both parties can resolve this

matter quickly and move on from the Court's purview.

Christine Knutson CPA testified on February 4th 2022 hearing,

"Appellant has $78 in disposable income per month." Furthermore, to

pay for this appeal and the Court transcripts, Plaintiff had to sell his

Dad's family irreplaceable 1969 farm trailer. Plaintiff testified he had

applied for 35 Engineering jobs and was turned down for every

Application, because of his age. Now 45 applications with the

same result. D testified she has a job making $3600 a

month as a Nanny with $3000 a month in disposable income.

D testified in 12/1/21 Deposition our son would invest what is left of the

$285,000 and the money from the IRA split, after the

divorce is over. Plaintiff previously taught their son his thirty years investing

experience. Their son will easily make D between 12% and 20% per

52

year. Our son will have at least $300,000 to invest. With 12% she will

make $24,000 a year on a $200,000 investment. This is $2000 a

Month, increasing her monthly disposable income to $5,000.

For an example, Ready Capital (RC) currently has a 14.3% dividend

for the last 10 years. It is a REIT which is a federal designation, and

they must give 90% of their profits as dividends. It ranges from $7.5-

$14 per share. It's currently at $7.2 and on it's way down, just as it

was in December. In 2021 our son Bryan had shares of RC. In

trial court hearings. DLC asked Christine Knutson what would happen if

$250,000 of the investment was to be used to purchase a home in Seattle.

Historically the Seattle area homes have increased 10% per year for the

last ten years. Therefore, the home purchase will have roughly similar

gains. The projections Plaintiff put here are easily done online or any
spreadsheet template. No

expertise needed. This is what Christine Knutson, CPA,

53

testified to in a variety of projections. A projection can be any amount

and any rate of return. As an example, Ally Bank savings is 4.1%

return now. RC stock is 14% return other investment vehicles are

different rates of return. Anyone with any amount of primary

education can do this. No expertise needed. DLC and TCJ already split the

Plaintiff's IRA with an illegal, supplemental judgement. D was allowed to

take out of the IRA $117,000 leaving only $83,000 for the Plaintiff. This is

illegal by Oregon Supreme Court Opinion in 8) Staveland and Fisher. This

asset must be split at the ending value.

The TCJ believed DLC's incorrect, untruthful, unprovable statements in the

trial.

The unlawful, one-sided ruling and judgement continued with other

inequitable financial demands leaving the Plaintiff with only $29,000

remaining in his IRA if all those should be allowed to be implemented.

1

2  This is because the totally unrealistic, amateur vehicle appraisals and

3

4  untruthful statements of DLC which will remove another $54,000 from

5

6  Plaintiffs IRA. Using the same 12% calculation of the expected returns on

7

8  the IRA, Plaintiff can take only $290 a month and has a negative −$922

9

10  a month disposable income. Exhibit 19 is Plaintiffs budget for 2023 which

11

12  shows how paying spousal support of $1000 a month, plus losing $70,000

13

14  from his IRA, the Appellant will be -6000 by July 1st 2023, and has not

15

16  even a hint of employment to afford this.  This is not fair nor equitable.

17  D is 62 years old. She can apply for Social Security and receive around

18

19  $1200 a month more. Increasing disposable income to $6100 a month.

20

21  Appellants 2023 budget is Exhibit 15. Exhibit 15 is a combination of

22

23  September 1, 2022 illegal judgements based on Christine Knudson

24

25  testimony and Plaintiff testimony. Plaintiff has to fight this unfair judgement

26

55

1    because it will leave him destitute and homeless. Not only that, but

2

3    Plaintiff wouldn't be able to rent a home or even a share rental

4

5    because he wouldn't be able to show any assets on his credit report.

6

7    Plaintiff living in his home, the one he paid in full and

8

9    satisfied the limited judgement for, is the lowest cost alternative for

10

11    his housing. No other place in the Portland area would accept  anything

12

13    close to his home for less money. That's what Plaintiff worked his whole life

14

15    to earn, and when the divorce happened, took a loan to pay off the

16

17    Respondent for her share of the value. If the unlawful judgement is upheld:

18

19    Plaintiff won't be able to pay

20

21    the home loan. Plaintiff will have to default on the loan and will

22

23    lose the home he paid D for. Plaintiff was given this offer with the

24

25    understanding he would own it free and clear. This statement of the

26

56

Plaintiff's home being owned free and clear was made by DLC during the

negotiations of splitting the home. Also it's

in the limited Judgment which split the asset of the home in  Exhibit 20.

considering ongoing support of $1000 a month to the Respondent

while the money was paid for the house. Had they brought this up to

Plaintiff at the time of the house division, they would have

alerted the Plaintiff of the extra financial demands being placed on

him, other than the fair and equitable division of the house. Plaintiff paid for

the home in good faith, but by this last-minute legal stunt, DLC made a

legal error in tricking the Plaintiff by bringing up the illegal charges that he

got the Trial Court Judge to agree to in the last moments of the trial. This

amounts to DLC playing a shell game against the Plaintiff with the approval

of TCJ.

57

1   This judgement from 21DR02783 will ruin Respondent's credit rating

2

3   because it will cause him to lose his home. Further driving his credit

4

5   rating lower. The credit rating is used by most property managers and

6

7   Landlords to decide who they will rent to and who they will deny.

8

9   The illegal Lis Pendens prevents Plaintiff from selling his home and

10

11   moving. Plaintiff tried to sell his home after the July 26th final

12

13   hearing because he was certain he would need to sell his home to

14

15   pay off the loan and live somewhere cheaper because the ruling

16

17   would be unfair and inequitable.

18

19   In later review of the trial transcripts and the reading of the law,

20

21   Plaintiff found that the rulings and judgements of TCJ and the actions of

22   DLC were illegal because the "on-going" support is not based on court

23

24   transcripts, exhibits or court facts. DLC in the May 1, 2021 hearing

25

26   transcripts said "temporary to very temporary" more than 31 times for the

58

1
2  $1000 a month support for Respondent to get the home ready for a quick
3
4  sale. Plaintiff had two realtors with clients who wanted to buy his home in
5
6  early August 2022. Then one realtor found out about the illegal Lis
7
8  Pendens and both clients decided not to purchase. Now Plaintiff's
9
10  home has lost $100,000 in value since the illegal Lis Pendens was
11
12  applied. It must be removed. Even a job of $20 an hour will not allow
13
14  Plaintiff to pay spousal
15
16  support. This is because his Social Security will be reduced dollar for
17
18  dollar. On a yearly basis he would only net a few thousand dollars
19
20  extra, not enabling Appellant to pay spousal support. This was
21
22  explained in detail to TCJ and DLC many times, however, TCJ believes
23
24  DLC untruthful, non-provable statements. The image below is why
25
26  Appellant can't get an engineering job in semiconductors.

59

The image above is why massive layoffs are happening in

semiconductors. Worldwide semiconductor chip sales down 9.2%

year to year and most recent data month over month is worse at

negative 2.9% in November, 2022.

Every judgement must be fair and equitable. The limited judgement

which split the family home 50:50 was fair and equitable. Plaintiff

asks the Federal Court to recognize the 50:50 split of the home as

a precedent and definition of fair and equitable for the purpose of this

appeal and further trial judgements. The ruling and judgement from

21DR02783 are neither fair nor equitable, causing an unnecessary

financial hardship on a handicapped, unemployable senior citizen

who is not fighting to deprive D's right to fair value in the marital assets, but

to make them equitable so both parties can resolve this matter quickly and

60

1
2  move on from the court's purview.
3
4  Some facts about the case from the transcripts. The afternoon of July 26,
5
6  2022 the trial was adjourned. TCJ said it would take 2-3 weeks to make a
7
8  ruling. On August 4th at 10:03 am Respondents' legal counsel, the
9
10  respondent's attorney filed an illegal Lis Pendens (Exhibit 14), against
11
12  appellant's home at the county property tax location. This filing location is
13
14  directly across the street from Trial Court Judge's chambers in the  county
15
16  courthouse.
17
18  Shortly thereafter DLC must have delivered Exhibit 2 to TCJ. Shortly after
19
20  that on the same day the ruling came out which DLC told Appellant was a
21
22  carbon copy of Exhibit 2. However, 6 days (4 working days) earlier TCJ
23
24  said it would take 2-3 weeks to make a ruling.
25
26  Page 500 of the transcripts. Line 17 to 19

61

1

2    THE COURT: "Thank you. All right. I will try to get a decision to you

3

4    all within the next two to three weeks. Thank you."

5

6    The trial court made logical leaps that were not supported by all case

7

8    facts. ORCP 21 A(2)(b) Factual basis. Court Ruling on case

9

10    21DR02783 from August 4th 2022 is not based on all case facts.

11

12    There exist many similarities between D's December 9th 2120

13

14    proposal and TCJ August 4th 2022 ruling to make them

15

16    legally the same under copyright law. Because both Plaintiff and D

17

18    were board members from 2015 until 9/2017, Plaintiff thought nothing

19

20    about registering the camper in both their names. However, after

21

22    9/2017 Plaintiff should have changed the camper registration to the

23    corporation. However, Plaintiff had forgotten about who it was

24

25    registered to until the divorce. During deposition both Plaintiff and D

26

62

1  testified about this. After deposition Plaintiff received the signed title

2

3  from D and then changed the title to the corporation which is its rightful

4

5  owner. This exchange is the same as a salesman

6

7  who has a company car and allowed to use it personally by

8

9  the corporation, located in a far-off place or country. Often times, in

10

11  these situations, those corporations have the sales person put the

12

13  car in their name. In a divorce that car would not be a marital asset.

14

15  As an example Joe Nelson, a family friend who worked for Nikon

16

17  Photolithography Stepper corporation had a company car registered

18

19  in his name. Nikon had their main factory in Japan and a corporate

20

21  office in California. Respondent testified she removed herself as a

22

23  board member of photolithography.net in Sept. 2017. It is not a

24

25  closely held company as Oregon Law requires. DLC, D and Plaintiff were at

26

63

1    the depositions. All three participants know that what is stated here is well-

2

3    documented fact if D and DLC will be honest. However, DLC stated

4

5    untruthfully many times in court that the registration shows the correct

6

7    owner. As of December, 2021 the registration did have the correct owner,

8

9    DLC stated in court.

10

11    Transcripts Page 487 starting at line 18 to page 488, line 5. "According to

12

13    14) ORS 803.010 that's -– that statute says that: "a certificate -- a

14

15    certificate of

16

17    title is a prima facie 4) evidence of ownership of a vehicle, of an interest

18

19    therein in all action, suits, or criminal proceedings when the title to, or right

20    of possession of any

21

22    vehicles involve proof of ownership or right to possession shall be

23    made by means of the original title, salvage title, or the Department of

24

25    Records," what their -- records they might have." [clarify]

26

64

1  DLC again said something he knew was untruthful that Trial Court

2

3  Judge accepted without question. Page 488 starting at line 8;

4

5  In addition, Transcripts Page 414 lines 6 to 25 says:

6

7  D's testimony similar. Page 22 line 14 to Page 25 line 5.

8

9  Continuing on with December 9, 2021 proposal (Exhibit 2):

10

11  The total value of my truck and VW is $22,000 by Ken Nix expert

12

13  appraiser. The payoff of D's vibe was $8200. DLC and the values the court

14

15  used in the August 4th ruling for the Vibe insurance payoff is $7451 and

16

17  $7398 respectively. DLC absolutely knows the $8200 payoff value is

18

19  correct, thus, another untruthful statement by TLC.

20

21  David Smith was untruthful about virtually everything and was not an expert

22

23  witness for the purposes of this trial.

24

25  More untruthful statements of DLC:

26

65

Page 2 Paragraph 2. Exhibit 2 As of December 9, 2021 the value for

the IRA was $234,000. However, market fluctuations of over $50,000

in value were 2.5 X more than Plaintiff removed to pay his attorney

fees. All Oregon Judges are aware that 12) ORS107.093 C, Oregon law

allows Plaintiff to pay his attorney fees from the IRA. RLC's comment that

his client was not able to enjoy these withdrawals,' is incorrect. Appellant's

response to his comment is: If she hadn't divorced me then I wouldn't need

to take these withdrawals.

Page 2 Paragraph 3. Exhibit 2: "Yes, the parties received

equal value and neither party should now claim that the other

received more or less."

However, since the February 4, 2022 hearing Respondents' Legal

Counsel, on multiple occasions told Trial Court Judge the sale value

66

1    was a number based on thin air.

2

3    Page2, Paragraph 4. Respondents' Legal Counsel knew in October,

4

5    2021 Appellant took out extra to qualify for the home loan and then

6

7    put back most of it. Respondents' Legal Counsel was sent the data to

8

9    prove it.  Appellant did not take out $38,000 as DLC untruthfully stated.

10

11   Yes, the $38,000 was taken out to secure the loan and then $27,000 was

12

13   put back in. The difference was used to pay the attorney.

14

15   Page 2 Paragraph 5. Exhibit 2 DLC's client can collect Social Security at

16

17   age 62 and get half of Plaintiffs amount without reducing his. Saying she

18

19   can't do that until age 67 is another untruthful statement.

20

21   Page 3 Paragraphs 1 and two. Exhibit 2 Are not based on any court

22

23

24   testimony. Plaintiff testified he had applied for 35 Jobs and can't

25

26   get one.

67

1
2   Also, Plaintiff doesn't perform RV electrical anymore. He testified
3
4   He is too old to do that in deposition and trial. Another untruthful statement
5
6   by DLC. Plaintiff has only $2093 from SSI not the $2243
7
8   number DLC stated untruthfully.
9
10  Also, it was illegal for Judge Fun or Trial Court Judge to award
11
12  spousal support. As a matter of fact, Plaintiff previously sent to
13
14  DLC June Ally Bank statement from 2021 which showed Plaintiff's account
15
16  negative for the first time in 40 years. This was without paying spousal
17
18  support. Plaintiff is on Snap Food stamps and heats his home with free
19
20  firewood because he has no money to pay for heat.
21
22  Page 3 Paragraphs 4 and 5, Exhibit 2 contain additional incorrect
23
24  Statements based on 2) perjury and more untruthful, incorrect statements
25
26  From DLC.

68

1

2

### C. IRS Evidence Contradicting Defense:

Exhibit 7 contains 2015 and 2016 C Corp Photolithography.net taxes filed

where the camper, Lazy-Boy chairs, window coverings in Plaintiff's home

and garden shed were written off (2015 and 2016) and accepted by the

IRS. By 6) a Corporate IRS filing which is accepted by the IRS is evidence

of ownership. Now over 9 years later it cannot be modified. TCJ illegally

classified these as marital assets solely on the basis of untruthful

unprovable statements of DLC in court.

The Court ignored IRS approval of deductions from prior years to arbitrarily

change asset values and weight the ledger to Defendant's advantage.

The photolithography.net assets were legally written off in 2015 and 2016

by IRS determination in the past. D and Plaintiff testified to this in

21DR02783  depositions.

69

## D. Board Meeting Evidence Contradicting Defense:

Exhibit 5 is minutes of the Sept 2017 board meeting of

Photolithography.net where the Defendant relinquished herself, and new

members were appointed per the bylaws.  Exhibit 6 is the bylaws of

Photolithography.net.  Photolithography.net and Climate Change Truth,

cctruth.org are not closely held companies or nonprofits. Respondent

removed herself from both in September of 2017. D through DLC filed an

illegal Writ of Execution (Exhibit 14) and illegally removed items which were

fixtures in Plaintiff's home, corporate property, items included in sale of the

home, and things from Plaintiff's father's estate such as the patio umbrella,

etc.

## E. Financial Evidence Contradicting Defense:

DLC stated that the support from the May 3, 2021, hearing was

"temporary to very temporary" more than 31 times. The first Trial Court

Judge on May 3, 2021 stated that the support was "temporary." On July 26,

2022 D closing statements DLC untruthfully stated that Plaintiff owed back

spousal support of $11,000, which Plaintiff did not in fact owe. The Trial

Court treated Plaintiff like an Invisible Man, and ignored all the testimony of

he and his witnesses, whether he had an attorney or not.  Plaintiff

presented substantial evidence that he has neither money nor job to pay

spousal support. None of that Court's rulings or judgements are legal

except the limited judgement which split the home equitably and the

termination of the marriage part of the final judgement.

The other final rulings and judgements are based on D and DLC false

statements, which were proven false by case facts, testimony, exhibits, or

transcripts, all of which were ignored. The splitting of Plaintiff's IRA was
illegal because it was not "Fair and Equitable" as the law requires, nor is it

legal according to the Oregon Supreme Court ruling in Staveland and

Fisher (13) concerning the splitting of a changing marital investment.  The

Lis pendens put on Appellant's home on August 4, 2022, is illegal apart

from a mechanic's lien and needed to be removed.  This unlawful action

cost Plaintiff roughly $100,000 loss of home value.

## F. Illegal Filings Contradicting Defense:

71

The Trial Court erred by denying Appellant's motion to stay the illegal

WRIT. The WRIT was illegal because DLC did not serve Plaintiff

7 days prior to giving it to the court by 19) UTCR 5.100. There was also no

Certificate of service in the WRIT. These are both violations of 19) UTCR

5.100. UTCR 5.100 states RLC must serve Appellant 7 days prior to

submitting anything to the court. Only a court ordered exception requested

in the illegal Writ would allow no service by 19) UTCR 5.100. Exhibit 14a is the

illegal Writ with no certificate of service.  Thus, DLC can't prove he served

Plaintiff. This is violation of 39) and other Oregon Laws.

DLC is a Bar licensed Attorney and has no excuse for not knowing

39). If DLC had served Plaintiff, then Plaintiff could have

served DLC an ORS 1.018 section 18.892 Challenge to Writ of

72

1  Execution. Plaintiff was denied this opportunity due to illegal Administrative

2

3  Law.

4

5

6  DLC's misdeeds. Plaintiff uploaded to Trial Court how DLC told TCJ

7

8  incorrectly to get

9  him interest in the cctruth.org KeyBank account. D removed herself from

10

11  the board of Climate Change Truth Research Inc. in September 2017. DLC

12

13  had no legal right to this because it is not a closely held 501c3 non-profit

14

15  corporation as the law for marriage requires. In the Same way

16

17  photolithography.net is not a shell company and is not a closely held

18

19  company. DLC tried to say Plaintiff just started it in December, 2021

20

21  because Plaintiff moved the corporation registration to Idaho at that

22

23  time.12/1/2021 deposition testimony

24  Exhibit 15 Page 56 Lines 4-24

25

26  **Evidence Supporting each of 6 Causes of Action:**

73

1

## A. Deposition Evidence Contradicting Defense:

2

3

4  TCJ almost without exception, received DLC's unsworn falsifications as

5

6  evidence in Court.   Plaintiff's objections to present well-documented facts

7

8  from deposition, expert testimony, or other documentation were ignored.

9

10  Transcripts page 414 lines 7 to 25. This shows D testifying she relinquished

11

12  herself from everything. D relinquished herself from cctruth.org and

13

14  photolithography.net consulting in September of 2017.

15

16  Both the Plaintiff and D testified truthfully about the assets of the

17

18  Corporation in deposition.  Transcripts of 21Dr02783 reveal 65 times DLC

19

20  made untruthful claims to the TCJ, who naively believed DLC without

21

22  asking for proof.

23

24  Plaintiff has written multiple legal motions which the TCJ has denied,

25

74

showing bias. One was to strike the testimony of the 2) Perjury

testimonies.  Another was against the illegal splitting of IRA

distribution. This is but one of the nine Oregon Supreme Court Opinions

violated.

The ruling of Appeal Court Justices from August 9, 2023 for A179571 is

not supported by actual case facts in the transcripts, Opening Brief,

Answering Brief, or Response Brief.

## B. Dishonest Dissoluton Paperwork:

Trial Court

21DR02783 erroneous ruling not based on case facts or exhibits.

Court of Appeals
A179571 wrong legal opinion
Oregon Supreme Court
S070434 wrong legal opinion

Plaintiff filed an appeal and was denied by an erroneous opinion. The

75

1   Oregon Appeals Court is functioning as an illegal administrative law court

2

3   not an article 3 of the US Constitution Court as required.  Plaintiff hired one

4

5   of the best Appeals Court Attorneys to help write the opening brief in the

6

7   Appeal, which was based on transcripts and exhibits.  These factual

8

9   documents were ignored by the Oregon Appeals Court. They chose to

10

11  believe the 18 USC 1001 answering brief of DLC for D, which referred to

12

13  the Oregon Supreme Court "a joke." This is a violation of 18) 28 U.S. Code

14

15  § 4101.

16

17  The Oregon Supreme Court likewise refused to correct the overwhelming

18

19  flood of Trial and Appeal court errors.  The only explanation for denying

20

21  such clear evidence as that presented above, is that the Oregon Courts

22

23  system is functioning under Administrative Law, not Article 3 of the US

24

25  Constitution, as required by 12).  The latter rulings are based on case facts

26

76

1   and law rather than the judge's arbitrary decisions.

2

3   Plaintiff, therefore, requests the Federal Court to review this document and

4

5   the opening Appeals Court Opening brief in A179571, including Court

6

7   transcripts and exhibits on which it is based. Plaintiff plans to upload this as

8

9   well.

10

11   Plaintiff is not making this request lightly, and Plaintiff is confident that the

12

13   reader will soon agree as he or she proceeds through this pleading and the

14   *Conclusion written by well-known Appeals Court Attorney, Jeff Smith,*

15

16   on page **132.**

17

18   Transcripts of this divorce case and exhibits read like a novel and movie

19

20   out of the 1960's Louisiana court case where a deceptive attorney and a

21

22   compromised judge framed an innocent man for a crime he didn't commit.

23

24   The song from Charlie Daniel's Band, "Can't you See," comes to mind.  It is

25

26   evident that D and DLC have acted unlawfully against Plaintiff on

77

1

2    innumerable occasions. The Oregon Appeals Court was charged with

3

4    righting these injustices, but did nothing.

5

6    In other words, the Oregon Appeals Court chose to operate as an

7

8    illegitimate Administrative Law Court and failed to do their job.  Plaintiff is

9

10    asking this Federal Court to correct these obvious injustices.

11

12    [Dishonest Dissolution]

13    On numerous occasions Defendant & DLC manipulated facts and figures

14

15    and misrepresented the atmosphere in the home to load the dissolution

16

17    balance sheet heavily against Plaintiff.  For example, Defendant

18

19    complained that Plaintiff was manipulative with finances and never let her

20

21    see the books.  On the contrary I (Plaintiff) would always ask if she wanted

22

23    to see the tax returns, and her attitude was always non-challan and

24

25    content. Sworn affidavits from Plaintiffs sister reveal how many times my

26

78

1   sister said "you have a model marriage."

2

3   D's dissolution filing was comprised of virtually all 18 U.S.C. § 1001 False

4

5   Statements,

6

7   Concealment. Claiming D was the victim when Plaintiff is the victim,

8

9   Substantial Similarity in Copyright Law.

10

11   Under 5) US Copyright law 17.17, Exhibits 2 and 3 show more than enough
12   similarity for these two exhibits to be considered legally the same. Points 1-
13   5 below demonstrate this clearly.

14

15   1)    For Exhibit 2: Paragraph 1, page 2 Exhibit 2. The vehicles and
16   camper value are the same as Exhibit 3. However, those are both
17   untruthful unprovable statements and give the impression that there could
18   have been some complicity between DLC, and TCJ.

19   2)    Paragraph 2, page 2 Exhibit 2. Wrong value of IRA at $234,000

20

21   3)    Paragraph 4, page 2 Exhibit 2. The same unpaid support and IRA
22   (legal) withdrawals to pay Plaintiff's attorney and get the home loan. Then,
23   money returned to IRA. This is in the transcripts.

24

25   4)    Paragraph 2, bottom, page 3 Exhibit 2. Spousal support request of
26   $1,000 is the same.

27

28   5)    Paragraphs 4 and 5, page 3 Exhibit 2 are the same.

79

1

2  Thus, Exhibit 1 is a carbon copy of Exhibit 2, which is the December

3

4  9, 2021 proposal that DLC prepared, which would leave Plaintiff destitute in

5

6  the same way as the August 4 ruling. This obvious collusion between TCJ

7

8  and DLC makes it impossible for the

9

10  ruling in case 21DR02783 to be fair and equitable.

11

12  [Dishonest Dissolution]

13

14  Plaintiff has no means to retain an attorney, so he learned the

15

16  relevant law by consulting with Appeal and Oregon Supreme Court

17

18  Attorney, Jeff Smith.  Plaintiff hopes to receive the same level of

19

20  respect from the Federal Court Justices which they would give

21

22  to any Attorney, given the allowance for Pro Se representation required by

23

24  law.

25

26  Jeff Smith provided formatting assistance, the Oregon Supreme Court

80

1

2  Rulings violated by the Trial Court, and wrote the conclusion in Plaintiff's

3

4  Opening Brief in A179571.  Nonetheless, the review of the

5

6  Appeals Court was clearly based only on D's untruthful Answering Brief

7

8  (DLC), which failed to discredit anything Plaintiff said in the

9

10  Opening Brief.  The latter was based on case facts, transcripts and

11

12  exhibits. As a matter of fact, DLC incorrectly assumed that the appeals

13

14  court had struck everything from page eight onward

15

16  "From: Jim Shipley [mailto:jtshipley@qwestoffice.net]

17

18  Sent: Friday, May 26, 2023 7:35 AM

19  To: 'Prof Dave White' <abcinc1@gmail.com>

20

21  Subject: RE: Response Brief filed today.

22

23  "The appeals court struck your excerpt of record.  That means that

24

25  everything from page 8 on of your brief was stricken.  So, there was no

26

81

1 need to reply to all of that garbage where you incorporate information that

2

3 was not part of the record. You need to take a good look at the trial

4

5 transcript so that you can understand what was part of the evidentiary

6

7 record and what was not."

8

9 This is a violation of 37) and 38) above. Plaintiffs opening brief for A179571

10

11 was based solely on transcripts and exhibits just like this complain is.

12

13 There are 20 Oregon Laws broken by TCJ in this complaint and Nine

14

15 Oregon Supreme Court Opinions violated. In

16

17 addition, the final ruling in 21DR02783 is not based on any of the case

18

19 facts. It is based on what appears to be collusion between DLC and TCJ,

20

21 well-written and well-documented perjuries, and collusion of DLC with

22

23 appraiser David Smith in his 2) perjury. It also ignores all of Plaintiffs

24

25 witness testimony.

26

82

## D. Board Meeting Evidence Contradicting Defense:

[Board Meeting]

Defendant and DLC ignored Board Meeting minutes proving that Defendant

had willingly resigned from the Board of Climate Change Truth and thus

had no stake in assets of the non-profit.  The Court accepted this

fabrication as truth in the face of Plaintiff's strong objection.

Plaintiff did not bid on the items taken because they were fixtures and

other items included in the home sale, from Plaintiff's father's estate and

corporate assets.

[Board Meeting]

Like Photolithography.net      Climate Change Truth

is not a closely held non-profit. D removed herself from cctruth.org board

on September, 2017. Her shares, according to the bylaws were

redistributed to other board members in a board meeting. No family board

83

members except Plaintiff are on the board. No non-profit funds were used

for personal use. On July 26th 2022, D testified twice she had relinquished

her interest in cctruth.org and photolithography.net. This is transcripts page

414 line 6 to Page 414 line 25.

Here again, Ds Legal Counsel made a

Ds Legal Counsel illegally brought the KeyBank account information to the

court on July 26, 2022. The KeyBank statements were under a protection

order, exempting them as evidence in Court. In Court TCJ and DLC

ridiculed Plaintiff saying he used company funds for personal use. Plaintiff

testified about two experiments with no funding. One is to check the tide

gage by Depot bay. The results are on the ocean data page of cctruth.org.

The other was on US 26 by the Portland zoo where the trees there are

consuming more than all the carbon dioxide from 160,000 vehicles per day.

[Board Meeting]

84

1  By the Climate Change Truth Nonprofit Research Corporation Bylaws, only

2

3  the Plaintiff, the President with power given by the board members may say

4

5  what is a legal nonprofit expense, No Judge except a Federal IRS Judge

6

7  could decide otherwise. Like Photolithography.net, Climate Change Truth is

8

9  not a closely held non-profit. D removed herself from cctruth.org

10

11  board on September, 2017. Her shares, by the bylaws we

12

13  redistributed to other board members in a board meeting. No

14

15  family board members except Plaintiff are on the board. No

16

17  nonprofit funds were used for personal use. Respondent's Legal Counsel

18

19  illegally brought the KeyBank account information to the Court on July 26.

20

21  2022. The KeyBank statements were under a protection order and could

22

23  not be brought to court.

24

25  **E. Financial Evidence Contradicting Defense:**

85

## **Financial Evidence**

The IRA was not split correctly at the ending value, as in Oregon Supreme

Court Case 8) 366OR49 2019 STAVELAND and FISHER.

The corporate property of photolithography.net, a Federal C Corporation

is not a marital asset. D relinquished her position in

September of 2017. Two new board members were added, and the

relinquished shares were divided equally between three board members

per the bylaws. However, DLC untruthfully stated the opposite in

court and the TCJ believed DLC over much testimony to the contrary.

In the final ruling the Court ignored negative job search results,

sworn testimony of friends and family, reliance on food stamps,

physical incapacity, and expert testimony of an accountant, that

proved Plaintiff's discretionary income is only $78, compared to

Defendant's about $5,000.  Incredibly, the Court awarded Plaintiff

$1,048 of Spousal Support in utter disregard for Oregon State

86

law.

Document (USD) D submitted in Trial Court was untruthful.  That USD

reported $3600 in income and expenses as if she owned a home and had a

house payment and bills. However, she is living with our daughter

essentially for free and pays "maybe $500 a month rent" based on her

testimony. However, the most recent bank statements Plaintiff has received

from D show no $500 monthly payment. Plaintiff has asked for more recent

statements, but has received none. D testified in 12/1/21 Deposition that

our son would invest what is left of the $285,000 after the divorce is over.

Plaintiff previously taught their son his thirty years investing experience.

Their son will easily make D between 12% and 20% per year. With 12%

she will make $24,000 a year on a $200,000 investment. This $2000 a

month, increases her monthly disposable income to $5,000.

87

As an example, Ready Capital (RC) currently records a 13.8% dividend

for the last 10 years. This is a REIT which is a federal designation, and

must give 90% of their profits as dividends. It ranges from $7-

14 per share.  It's currently at $7.31 and on its way down, with a

High of $13.50. In 2021 our son Bryan owned shares of RC. If he

Invested $200,000 in September, 2022 as D testified he would. Then

he purchased RC at $10, giving D 20,000 shares. With those

shares she would have received $8400 in dividends at the

end of October.  Then selling at $13 she would have made $3 a

share in 6 months with $60,000 added to her account. Bryan is an

expert at this. DLC and TCJ already split with an illegal supplemental

judgement Plaintiffs IRA, $117,000 to D and only $83,000 to Plaintiff

because TCJ believed DLC's incorrect, untruthful, unprovable statements

88

1

2  in trial. This illegal one-sided ruling and judgement leaves Plaintiff with only

3

4  $29,000 remaining in his IRA. If the IRA were split by the ending value of

5

6  the IRA, variable asset (end of divorce trial) is 199,885.99. The Oregon

7

8  Supreme Court in 8) Staveland and Fisher ruled this must be split equally

9

10  at the of July, 2022, with the account all in cash. Half is $99942.99. Thus, D

11

12  illegally took $117,000 and must return $17,057.01 back to Plaintiff's IRA

13

14  along with Grandkids college saving accounts.

15

16  They must be split at the ending value dated August 1st 2022 when the IRA

17

18  was valued just under $200.000.  D must transfer $13205.74 to Plaintiff's

19

20  IRA. The Grandkids total was 15,689.88 after withdrawals so we each get

21

22  $6454.50 after paying federal and state taxes,  To summarize, $17,057.01

23

24  $6454.50  =$10,602.51 restored to Plaintiff's IRA.

25

26  D through DLC filed a perjuriously complaint and said Plaintiff stole the

Grand Children's money which is untrue. Plaintiff split it correctly by a

Oregon Supreme Ruling. D through DLC and TCJ illegally split the

The unfair final ruling and judgement are unequitable due to the non-expert

vehicle appraisals and untruthful statements of DLC, which will remove

another $54,000 from Plaintiff's IRA. Using the same 12% calculation as

was performed above for D, Plaintiff can take only $290 a month and has a

negative – $922 a month disposable income when paying D the $1048 a

month illegal support.

Plaintiff has no Job and is retired with only $78 a month in disposable

income. Currently his checking account balance is $450 with an upcoming

mortgage payment of $1350 and other bills totaling $1200 a month, with an

18% increase in Electric Rates by Portland General Electric looming. Also

Plaintiffs health is failing and Plaintiff needs a walker to be able to walk.

90

Exhibit 18 is Plaintiff's budget for 2023 which shows how paying spousal

support of $1000 a month, will leave Plaintiff at -$6000 by July 1, 2023.

This is neither fair nor equitable. D, Plaintiff's ex-wife, is 62 years old. She

is now eligible for Social Security and will receive around $1100 a month,

increasing her disposable income to

$6100 a month.  Plaintiff has no choice but to fight this unfair judgement

because it will leave him destitute and homeless, and without even a

vehicle to live in. Not only that, but Plaintiff wouldn't be able to rent a home

or even a shared rental because he would have no assets on his

credit report. Furthermore, defaulting on the home loan will drive his

credit rating so low he won't be able to live anywhere.

Plaintiff presents this complaint to the Federal Court requesting that

91

this case be convened under Article III, of the U.S. Constitution.

Article III, Section 2 of the U.S. Constitution

DLC referred to the Oregon Supreme Court "a joke," an indication of his underlying attitude toward the legal system.  This is a violation of 18) 28 U.S. Code § 4101.

1.  D has around $5,000 a month in disposable income from a job and investments of $350,000. D can apply for SSI and get another $1100 a month at this time. By contrast, Plaintiff has $23 in monthly disposable income and can't get a job which will pay spousal support.

    a.  Plaintiff has explained to DLC many times how a minimum wage job, after reducing Plaintiff's social security dollar for dollar, will yield less than $4000 a year increase. This will not allow Plaintiff to pay spousal support to D, which she doesn't need or deserve. The only way Plaintiff could pay spousal support is to get an engineering job. However, none of those jobs are available to Plaintiff.
    b.  Plaintiff hurt his back two years ago and can't hardly walk without a walker. Plaintiff has another doctor's appointment

D and her witnesses perjured themselves to create more than a $44,000

illegal increase on the Plaintiff's side of the ledger. This is exhibits 8,9 and

11.

92

1    The transcripts show that DLC made 65 false statements in court for which

3    he has no proof (18 U.S.C. § 1001 False Statements, Concealment). TCJ

5    believed and accepted them all, even after Plaintiff demonstrated their

7    falsity.

9    DLC admitted in the spurious contempt case that Plaintiff doesn't owe

12    $11,000 spousal support which DLC then falsely stated was owed in the

14    closing statement of 21DR02783. (18 U.S.C. § 1001 False Statements,

16    Concealment)

19    DLC was also untruthful regarding the procedure for splitting of the IRA (18

21    U.S.C. § 1001 False Statements, Concealment).  The opinion of the

23    Supreme Court justices in 8) Staveland and Fisher was that the ending

25    value ($199.773.16) is to be split equally. Thus, TCJ improperly denied

27    Plaintiff's motion to change the decision based on this Oregon Supreme

29    Court case. DLC misrepresented Photolithography.net corporate assets

30    inaccurately and untruthfully (18 U.S.C. § 1001 False Statements,

31    Concealment). DLC takes issue with a sign posted in front of the

93

1   home stating that native shrubs will consume 5 times more carbon

2

3   dioxide than grass.  People driving by may read the sign then go to

4

5   Cctruth.org.   Plaintiff responds that this is advertising, a legitimate

6

7   nonprofit business expense.

8

9   The Economy is crashing with twelve straight months of

10

11  increasing unemployment, as seen here.

12

13  https://www.bls.gov/news.release/empsit.nr0.htm



14

15  From Friday, September 1, 2023 Government report.

16  "Total nonfarm payroll employment increased by 187,000 in August,

17

18  and the unemployment rate rose to 3.8 percent, the U.S. Bureau of

19

20  Labor Statistics reported today. Employment continued to trend up in

21

22  health care, leisure and hospitality, social assistance, and

construction.

"Employment in transportation and warehousing declined.

The unemployment rate rose by 0.3 percentage point to 3.8 percent in

August, and the number of unemployed persons increased by 514,000

to 6.4 million. Both measures are little different from a year earlier,

when the unemployment rate was 3.7 percent and the number of

unemployed persons was 6.0 million. "Among the major worker groups, the

unemployment rates for adult men (3.7 percent), Whites (3.4 percent), and

Asians (3.1 percent) rose in August. The jobless rates for adult women (3.2

percent), teenagers (12.2 percent), Blacks (5.3 percent), and Hispanics

(4.9 percent) showed little change over the month.

"The September 1st USA Jobs report is not good news for the US

economy. The increases were in minimum wage jobs except for Health

Care and possibly construction.  However, with interest rates above 7%

construction spending is slowing."

There are additional 2) perjury and untruthful statements in DLC closing

comments in 21DR02783. The facts are D and Petitioner on Review always

slept in the upstairs' spare room at our Daughters home in Sammamish

WA.  The claim that she was sleeping on the floor in the spare room is not

truthful.  A bed could have easily been purchased from the $285,000

Petitioner on Review provided when he bought the home.

We find these closing arguments for Trial 21DR02783 transcripts starting

on page 483.

Lines 17 to 21. "My client is living on the floor of her daughter's house.

and, according to Mr. White, that is perfectly fine. He should just

continue to live off of his children, or she should live off of her children.

That isn't what she wants to do. She's testified here."

She was not living on the floor. That is DLC again playing D for the victim.

Upstairs in the home is a spare bedroom D and plaintiff stayed in when we

visited. D was most likely sleeping in that room.

She is and was not living off our children. She had, and still has a job,

making $3600 a month.  She is currently living with our Daughter and

Son-in-Law and helping with our Grandchildren.

There are many instances where the Trial Court Judge would not

approve Plaintiff's legitimate motions, showing strong bias.

Plaintiff has submitted many legitimate motions which the TCJ

Denied:
Pleading to strike 2) Perjury testimony from the record.
Pleading for no Attorney fees.
Pleading for Relief from Judgement.
Pleading to correct illegal splitting of the IRA.
Pleading to vacate ruling.
Pleading to stay the illegal WRIT.

96

All these motions were legal, well-written and well-documented and the

TCJ showed strong bias in denying them all, refusing to be fair and just.

Plaintiff is already without income, in debt, and can barely

pay his bills. Also because of high interest rates, a failing economy, a

declining home value, and an illegal Lis Pendens placed on his home so

he couldn't sell it, Plaintiff is in dire straits and needs relief provided by the

federal court.

5. Exhibit 17 from page 57, line 15 to page 59, line 7. Ds

legal counsel was at the depositions and knows this, however many

times in trial he said incorrectly the camper was used from day 1

personally. In transcripts page 485, line 6, page 487 line 13 to 16 Page 488

line 17 to 22 D's legal counsel said there was "no evidence,
no evidence that's been presented that Ms. White ever gave up

any interest in that corporation". This is another of DLC untruthful

statements. There was opposite testimony on the same day as this

statement in DLC untruthful closing statement.

Every judgement must be fair and equitable. The limited judgement

which split the family home 50:50 was fair and equitable. Plaintiff

asks the Federal Court to recognize the 50:50 split of the home as

a precedent and definition of fair and equitable for the purpose of this

97

Appeal and further judgements. The judgement from 21DR02783 is

not fair and is inequitable. Another non-provable statement in trial

from Respondents legal counsel. Page 7. The statement in red is

incorrect. In June 2021 Appellant sent 3 current market analysis

(CMA) from Professional Realtors to Respondent's legal counsel

through his previous attorney. These showed value at $570,000.

Respondents Legal Counsel provided two fake CMA's from realtors

who used comparables in the West Hills of Portland to increase the

value. Never the less, we agreed the home was worth around

$605,000

and since not paying $35,000 in realtor fees would net $570,000. This

value wasn't arbitrary as DLC stated incorrectly. Transcripts from

21DR02783 page 7 line 6-14

DLC speaking. "The Court fashioned an order giving wife exclusive

possession of the residence and placed her in charge of getting it sold; at

the eleventh hour husband offered to buy out wife's interest. It was a

negotiated settlement for 285,000. This

figure was purely arbitrary in many regards. It's just a settlement

number based on two people negotiating. Husband has paid his own home

98

loan, paid off wife, and received sole title of the property." Plaintiff asks

what does "received sole title of the property" Transcripts page 11

Lines 8-15 THE COURT: "And in order for me -- because of lack of

other assets and stuff here -- that probably wasn't a right amount.

And what I would like to do is take the asset, the house, and give her

more of the chunk of the value of the house as a way of equalizing

this asset because she's not going to have the ability to earn in the

future, whereas he may."

Two issues with the courts statement on Page 11.

1.    "what I would like to do is take the asset, the house, and give her

more of the chunk of the value of the house as a way of equalizing

this asset" This asset was fixed at $605,000-> $570,000 The home value

has dropped almost $100,000 since the illegal lis pendens was

put on Plaintiff's home. However, a friend of the appellant is a

professional home appraiser. She said because the 10-year bond

yield curve has inverted we are entering a deep recession. Home

values plummeted in 2023. Therefore, since D asked for an equalizing

award in the trial based on an increasing asset value, Plaintiff will ask the

Federal Court for this based on the value when the case is heard.

2.    D has a job making $3600 a month with around $3000 to $6100 a

99

month disposable income. Plaintiff has no job and $78 in disposable

income.

Plaintiff has applied for 45 jobs and still no employment. DLC, D's attorney,

has the last five or six employment rejection emails. Additionally, Plaintiff is

spending 60 hours a week studying legal information to write this

complaint.

Plaintiff asks the Federal Court to either give Plaintiff the difference in home

value at the Oral argument stage or rule the asset for this complaint is fixed

at $605,000 and net $570,000.

3.     Timeline of events.

April 2021 emails to Son and Daughter about Appellant's desire to

purchase the home. May 3rd hearing same desire expressed.

July 12th 2021 hearing Realtor Steve Grey was chosen by the

Court. His contract had the washer-dryer, air compressor,

refrigerator, stereo and speakers, window coverings and hot tub

included in the sale.

July 23rd 2021 the first version of limited Judgement was given to DLC

after negotiation.

August 17th at 11 a.m. Appellant inspected the home and saw that the

100

expensive items were taken. He sent emails which DLC didn't object to that

everything left needed to stay in the home because Plaintiff has no money

to buy anything.

     August 19th the limited Judgement was signed by Trial Court Judge.

September 20th Loan was approved and closed the transaction a

few days later. The lender required a full satisfaction from the May

3rd limited judgement and considered the language in Exhibit 20

which split my home equitably. There wasn't, nor has there ever been a lien

for the temporary

spousal support. The temporary spousal support ended when

Plaintiff bought the home. The so-called ruling of August 4th is based on

many half-truths and untruthful statements of DLC and collusion with TCJ.

Appellant never owed the $11,000 temporary spousal support. A full

satisfaction document

for the previous support judgement from May 2021 for his client

to sign was required for Plaintiff to get the loan by the lender.

However, this was never signed. After 72 hours it was deemed signed and

by the statements in the judgement, so the loan proceeded to funding

completion.

From Exhibit 18.

"Wife will promptly sign any documents necessary for Husband

to obtain financing to pay the equalizing property award set forth below.

Wife shall sign and deliver a Bargain and Sale Deed upon presentment.

This Limited Judgment will be

deemed to be the equivalent to Wife's signature under ORCP 78A if she

does not sign and return any documents necessary to complete the

conveyance or Husband's loan within 72 hours

of written request. D had already split Plaintiff's IRA inequitably using

similar words in italics to split it so Plaintiff didn't need to sign an Ally Invest

transfer document. Also in Exhibit 2

"Husband is awarded all right, title and interest in the real

property and residence located at 18965 NW Illahe Street, Portland OR

97229, legally described as Lot 10, Block ROCK CREEK No. 6,

Washington, County, Oregon, free and clear of any claim of Wife but

subject to payment of the

equalizing property award set forth below." What does "free and

clear of any claim of Wife" mean? Also in Exhibit 19,

" Personal Property: Unless the parties otherwise agree to a

division of personal property, the personal property in the home

on or about May 16, 2021, including furniture and furnishings,

102

kitchenware, tools, electronics, linens, etc., should remain in the

home normal wear and tear excepted. Any items removed from

the home after May 16, 2021, except for Wife's personal effects
and belongings, shall be returned to the home. Wife is entitled

to her personal items such as any and all clothing and personal

electronics that she may have (such as an I pad or personal

computer). In the event of a dispute, all disputed item(s) should

remain in the home subject to later distribution by agreement or litigation."

This has never occurred and must be completed.  Then mediation may

happen.

Plaintiff did not use any nonprofit funds for personal use. The ruling in case

21DR02783 is not close to fair and equitable. It is a collusion between TCJ

and RLC. It leaves the D in this complaint with $466,000, getting $1000 a

month support with $4000 a month disposable

income. Plaintiff with $335,000 debt and $29,000 left in IRA and negative

$922 a month in disposable income. Due to differences in vehicle values

103

1   and other inequitable judgement values, the $83,000 will become $29,000.

2

3   Also, with an illegal lis pendens on his property Plaintiff can't sell his

4

5   property and move to a less expensive location. The

6

7   Respondent already started this process and removed $117,156.89 from

8

9   Appellant's account without Appellant's permission. Leaving only

10

11  $82616.28 in Plaintiffs IRA. Exhibit 13 shows no correlation between

12

13  account withdrawals and account value. Plaintiff is requesting David

14

15  Smith's appraisals be thrown out of the record. All D's witnesses told

16

17  untruthful non-provable

18

19  statements. Respondent's Legal Counsel apparently colluded with the

20

21  vehicle appraiser for Plaintiff's vehicles to artificially increase the

22

23  Plaintiff's side of the ledger. Plaintiff is Pro Se because he has

24

25  no money to pay for an attorney.

26

104

## F. Ilegal Filings Contradicting Defense:

The Court repeatedly winked an eye at DLC's violation of

legitimate court rules regarding filing deadlines, formatting, and

obligation to copy Plaintiff.  On the other hand, Plaintiff was held

accountable to the strict letter of the law in every similar instance.

The WRIT served, violated the Oregon Writ of Execution

law which states in Section 8 (ORS 34.080) the Writ served must be an

original with TCJ signature or a court certified copy. The Writ served on

Plaintiff by Washington county Sheriffs met neither of these requirements.

The Trial Court Judge (TCJ) accepted virtually anything D, her witnesses,

and DLC said at face value, contrary to factual evidence.

DLC filed an illegal Lis Pendens on POR's home on August 4, 2022,

preventing PLAINTIFF from selling, thus losing about $100,000 value.

The final Opinion of TCJ was a carbon copy of a December, 2021 proposal

from DLC, which would have left PLAINTIFF penniless. The final Opinion

105

came only 2 hours after the Lis Pendens was filed. This is strong

evidence of collusion. The December, 2021 proposal was never made part

of the Trial record!  Thus, the final ruling concluded Plaintiff was untruthful,

because the missing sworn testimony of both Plaintiff and D was

disallowed. This was an egregious one-sided decision, based on refusal to

admit pertinent, actual case exhibits or testimony.  For proof, any Federal

Court Justice can order the video from Washington County Courthouse for

August 4, 2022 from 10am to 11am. Plaintiff can review this video and

identify DLC.

DLC filed an illegal Writ of Execution, breaking 4 Oregon Laws in the

process. TCJ approved it contrary to law. The items taken from the home

were corporate assets, items included in the sale of the home, items

willed to Plaintiff, or fixtures like speakers mounted on the wall and wired to

the stereo through the wall. These are textbook examples of "fixtures" as

defined by Oregon law. The WRIT had no Certificate of Service, was not

served to Plaintiff 7 days prior by Oregon 19) UTCR 5.100, and the service

of

106

the Writ was a plain paper copy when ORS 18.862 requires that an original

or certified court copy must be served. ORS 18.892 is the challenge WRIT

law. Plaintiff was denied opportunity to present this evidence due to lack of

notification. D illegally filed a false police report and attempted to have

Plaintiff's heirloom guns destroyed. That police report was based on 18

U.S.C. § 1001 False Statements, Concealment.

Plaintiff won the family dog in the bidding process.  DLC again

portrayed D as the "victim," alleging that D needed the family dog for moral

support (18 U.S.C. § 1001 False Statements, Concealment).

Plaintiff filed four legal motions in the trial court and TCJ, showing extreme

bias, denied them all. The Authorities Cited above reads like a Who's Who

of Oregon and Federal laws broken, Oregon Supreme Court Opinion's

violated, and Federal Laws Broken by DLC and TCJ.

Plaintiff filed a lengthy (over 400-page) complaint to the Oregon Attorney

107

Ethics Commission exposing DLC.  However, it was dismissed in an

Administrative Law ruling that as usual disregarded all relevant facts and

law.

The Conclusion to the Opening Appeal Brief in A179571 was written by

Appeals Court Attorney Jeff Smith. To back that up, Plaintiff included trial

exhibits from the exhibits of the Opening Brief, which were correctly struck

by the Appeals Court. However, DLC erroneously assumed that the

Appeals Court struck everything from page 8 to the end in the Opening

Brief. Thus, DLC's Answering Brief did not debunk or deny any case facts

in the Opening Brief.  Therefore, the Appeals Court Justices should have

concluded that D via DLC agreed with everything in the Opening Brief.

However, they did not do so, based solely on DLC's statement of his faulty

assumption, and without reading themselves.  Once again, this is an illegal

108

1  application of administrative law, which refuses to render judgment based

2

3  on facts of the case. D through her representative, DLC, has not to date

4

5  objected to any of these fundamental facts within the deadlines allotted.

6

7  That's because D knows that they are true.  D has thus tacitly admitted and

8

9  confessed to their veracity.  As a bar-licensed attorney, it cannot be that

10

11  DLC has thus far missed or overlooked every opportunity to object to any of

12

13  these well-documented accusations and filings in the Oregon Supreme

14

15  Court case.  Plaintiff suspects DLC does not want to incriminate himself

16

17  and D any further.  The facts of this case based on transcripts and

18

19  exhibits are simple and indisputable, as outlined above and detailed

20

21  below:

22

23  The facts above and below are detailed in filings in this case S070434,

24

25  and A179571 Opening Appeal Brief and the 21DR02783 transcripts and

26

109

exhibits.

This filing in Federal Court is at the same time a motion to vacate the

Appeals Court Opinion in A179571 and the Trial Court ruling and final

Judgement of 21DR02783.

Following demonstrates additional bias of the Trial Court Judge.

Ds legal counsel submitted to the Court a motion without

sharing it with Plaintiff, which is required by law.

Transcripts starting at page 129 Line 5 to page 132 Line 4.

This has been removed from this brief to shorten it. The transcripts will be

uploaded to the case once electronic access has been given. This is DLC

illegally emailing TCJ and bypassing Plaintiffs previous attorney. The

docket was not properly before the court and TCJ said it was. That is

violations of 6), 12), 13) and 14) above.

110

1    Page 132, Line 1-4 are the first time Trial Court Judge

2

3    revealed knowledge that "He has authority and uses them for his personal

4

5    accounts."   This had never been stated before in Court, so how did TCJ

6

7    know.  This is additional evidence of collusion between DLC and TCJ.

8

9    On December 9th 2021 DLC sent a proposal to Plaintiffs previous legal

10

11    counsel which would have given D 90% of the cash and IRA and all

12

13    Plaintiffs social security. This was rejected. The final hearing was July 26th

14

15    2022 on a Thursday afternoon. The TCJ said it would take two to three

16

17    weeks to make a ruling on the case. Then on August 4th 2022 around 10am

18

19    DLC filed a lis pendens against Plaintiffs home around 10am. This location

20

21    is directly across the street from the court house. Then three hours later

22

23    TCJ wrote the final ruling which is almost exact copy of the 2021 Proposal

24

25    which had never been made part of the court record. This is violations of 2),

26

111

7) 6), 12), 13), 14), 15), 36), 37), 38 and 40)

DLC's Answering Brief did not deny anything Plaintiff stated in his Opening

Brief. Therefore, the Justices should have taken this as being in agreement

with Petitioner on Review's Opening Brief.

Plaintiff's Response Brief detailed everything DLC did not deny. Why is the

Appeals Court approving the decision of a Trial Court Judge who is clearly

biased against Plaintiff and accepts untruthful statements from DLC without

asking for proof? In the Opening Brief of A179571 Plaintiff explains how

DLC reported in transcripts that the spousal support (May

3, 2021), was "temporary to very temporary," and so the Previous

Judge would not rule for ongoing support. Therefore, the D on

Review doesn't back support in the final ruling. Again, why is the

Appeals Court covering for a very biased judge and deceptive attorney?

112

1   DLC is in the habit of sending documents to the Trial Court Judge

2

3   directly and not sending them to the opposing attorney.

4

5   Here are two examples.  In the March 29, 2022 hearing he announced

6

7   he had submitted a motion to examine the Key Bank accounts of

8

9   cctruth.org. The TCG said it must be properly "in front" of the court

10

11  because it's here (in his possession). However, 19) UTCR 5.100 says to be

12

13  properly in front of the court the document must be delivered to the

14

15  opposing Attorney 3 days prior to submitting it to the court.  This was not

16

17  done.

18

19  Likewise, the WRIT DLC wrote was never served on Pro Se Plaintiff

20

21  seven days prior by Oregon UTC 5.100 and filing in 21DR02783.

22

23  Why doesn't the Appeals Court give the same consideration to a

24

25  Pro Se litigant, who is a retired Chemical Engineer well versed in the

26

113

1  Relevant law, that the Court gives to a prevaricating attorney who

2

3  persistently fails to conform to the law and seems to be ignorant of the law?

4

5  Isn't the Appeals Court supposed to correct Trial Court errors?

6

7  The Oregon State Bar is prepared to file Class C felonies of well-

8

9  documented 2) perjury that the Ethics Department received in a complaint

10

11  Petitioner on Review filed against DLC. Therefore, the final ruling of

12

13  21DR02783 is neither correct nor legal.  Sadly, the Trial Court has the

14

15  appearance of a kangaroo court.

16

17

18

19  **Summary of Argument**

20

21  **SUMMARY OF WELL-DOCUMENTED CASE FACTS**

22

23  **Summary:**

24  DLC's untruthful, incorrect statements are not provable and when Plaintiff

25

26  asked for proof on numerous occasions

114

DLC provided none.  Plaintiff has on many occasions proven he made

incorrect, untruthful statements and we have sent proof of this to him many

times, as we are now, and he has ignored our requests.

The Artic Fox camper owned by Photolithography.net since 9/2015

Exhibit 3 is 2015 C Corp federal taxes filed where the camper, Lazy-

Boy chairs, window coverings in my home and garden shed were

written off and accepted by the IRS. Now over 7 years later it can't be

changed.

Exhibit 5 is the Sept, 2017 board meeting where D removed herself and

new members were appointed per the bylaws. Her shares were split to the

remaining board members per the bylaws. This

corporation has not been a closely held company since

9/2017. The Oregon law requires a company to be closely held to be

included as a marriage asset. The camper from day 1 was used on a

5-month contract with FLIR Wilsonville. Anyone can contact FLIR to

verify this. Two contacts. ashish.mistry@flir.com;

Peter.Villarreal@flir.com who can verify the contract Plaintiff had

through a temp agency. DLC knows both Plaintiff and D testified in

Deposition about this D was there. However, he **stated** untruthfully the

camper was a marital asset just because Plaintiff forgot to change the title

to the company in September, 2017 when Plaintiff removed herself from the

board of photolithography.net and Climate Change Truth. The title was

changed to photolithography.net after both Plaintiff and D testified correctly

in December 1, 2021 depositions. Semiconductor consulting requires the

consultant to stay very close to the factory location. The Lazy Boy

chairs were used for consulting with remote customers using ZOOM.

1   The light coming through the patio door and the North Window

2

3   In the summer disturbed conversations with customers because

4

5   Plaintiff could not see their screen very well. Plaintiff also had

6

7   customers of Calvari Semiconductor, Crocus Nano Electronics, Opto-

8

9   Diode, Paul Corp filter work, UCSB Nanofab, UMC and Verivanti.

10

11  Exhibit 5 is the bylaws of Photolithography.net consulting. Exhibit 6 is

12  a customer trip report from 2016 which was the last work the company

13

14  performed.

15

16  Exhibit 15 and 16 are D's and Plaintiff's deposition on

17

18  12/1/2021. This was completely ignored by TCJ's August 4, 2022 ruling.

19

20  Both Plaintiff and D testified the camper, Lazy-Boy chairs, window

21

22  coverings and garden shed are owned by photolithography.net

23

24  Exhibit 16 from Page 21 line 22 to Page 25 line Exhibit 15 from page 57 line

25

26  15 to page 59 line 7. DLC was at the depositions and

27

28  knows this, however many times in trial he stated incorrectly and

29

30  untruthfully the camper was used from day 1 personally. In transcripts page

31

32  485, line 6, 487 line 13 to 16 Page 488, line 17 to 22 DLC said in closing

33

1  statements there was "no evidence that's been presented that Ms.

2

3  White ever gave up any interest in that corporation." This is another

4

5  of DLC untruthful statements. There was

6

7  testimony from his client the Respondent on the same day as this

8

9  statement in his untruthful closing statement. Most of DLC closing

10

11  statements in 21DR02783 on July 26,

12

13  2022 were untruthful, non-provable statements he knowingly made.

14  Another non-provable, untruthful statement in trial from DLC is on Page 7.

15

16  The statement in italics is incorrect. In June, 2021 Plaintiff

17

18  sent 3 current market analysis (CMA) from professional realtors to

19

20  DLC through his previous attorney. These showed value at $570,000.

21

22  Respondents legal counsel provided two fake CMA's from realtors who

23

24  used comparables in the West Hills to

25

26  increase the value.  Nerveless, we agreed the home was worth

27

around $605,000 and since not paying $35,000 in realtor fees would

net $570,000. This value wasn't arbitrary per DLC,s untruthful, incorrect

statement.

Transcripts from 21DR02783 page 7, line 6-14

"The Court fashioned an order giving wife exclusive

possession of the residence and placed her in charge of getting it

sold; at the eleventh hour husband offered to buy out wife's interest. It

was a negotiated settlement for 285,000. *This figure was purely*

*arbitrary in many regards. It's just a settlement number just like two people.*

Husband has paid his own home loan, paid off wife, and received sole title

of the property. The statement in bold just like statements in Exhibit 20,

shows yet another way the Lis Pendens is illegal on Plaintiff's home.

    Transcripts page 11 Lines 8-15

THE COURT: And in order for me -- because of lack of other assets

and stuff here – that probably wasn't a right amount. And what I would like

to do is take the asset, the house, and give her more of the chunk of the

value of the house as a way of equalizing this asset because she's not

going to have the ability to earn in the future, whereas he may." Two issues

with the courts statement on Page 11.

1."what I would like to do is take the asset, the house, and give her more of

the chunk of the value of the house as a way of equalizing this asset" That

statement was based on DLC's incorrect untruthful statements. This asset

was fixed at $605,000-> $570,000 Since the illegal Lis Pendens was put on

Plaintiff s home it has lost $100,000 in value.  Also DLCs untruthful

statement "placed her in charge of getting it sold; at the eleventh hour

husband offered to buy out wife's interest. It was a negotiated settlement for

285,000."

It is well-known Plaintiff wanted to buy the home since April, 2021. DLC

statement at the eleventh hour is just another untruthful non- provable

statement Trial Court Judge believed without proof. However, a friend of the

Plaintiff is a professional home

appraiser.

She said, "because the 10-year bond yield curve has

inverted we are entering a deep recession. Home values will be

plummeting in 2023. Therefore, since D asked for an equalizing award in

the trial based on an increasing asset value, Plaintiff will ask the Federal

Court for this based on the decreasing value in this complaint. Plaintiff

believes this exchange between DLC incorrect statements and TCJ is why

TCJ would not approve Plaintiff correct splitting of the IRA."

D has a job making $3600 a month with around $3000 a

month disposable income. Plaintiff has no job and $78 in

disposable income per month. Plaintiff has applied for 45 jobs and no

employment. DLC can supply the last five or six employment rejection

emails.

Additionally, Plaintiff is spending 60 hours a week studying legal information

to write this brief. Plaintiff asks the Federal Court to either give Plaintiff the

1  difference in home value or rule the asset for this appeal is fixed at

2  $605,000 and net $570,000 and half still is

4  $285,000.

6  DLC errors:

8  Plaintiff uploaded how DLC told TCJ incorrectly to get him interest in the

10  cctruth.org KeyBank account. D removed herself from the board in

12  September, 2017. He had no right to this because it is not a closely held

14  501c3 non-profit corporation which the law for marriage requires. In the

16  same way, photolithography.net is neither a shell

18  company nor a closely held company. DLC tried to say I just started it in

20  December, 2021 because I moved the corporation registration to Idaho at

22  that time. Another untruthful, non-provable statement of

24  DLC.

## SUMMARY BY OREGON APPEALS COURT ATTORNEY, JEFF SMITH

29  The ruling in case 21DR02783 is not even close to being fair and

30  equitable. It is collusion between Trial Court Judge and DLC.  It

31  leaves the D with $466,000, getting $1000 a

33  month support with $4000 a month disposable income. Meantime,

Appellant is left with $335,000 debt and $29,000 in IRA and negative $922 a month in disposable income. Due to differences in vehicle values from non-expert vehicle appraisals and other inequitable illegal judgement values, the $83,000 will be reduced to $29,000. Also, with an illegal Lis Pendens on his property Plaintiff can't sell his property and move to a less expensive location. D already started this process and removed $117,156.89 from Plaintiff's account without Plaintiff's permission. Leaving only $82,616.28 in Appellants IRA. Exhibit 13 shows no correlation between IRA account withdrawals and account value.

In the final ruling the TCJ ruled the Plaintiff may no longer contact the Court because of promises that they perceived as threats. The Appeal Court attorney, Jeff Smith who Plaintiff hired to help him write his Brief said it was a well-documented, and well-written brief. After learning of the Appeals court ruling on 8/9/2023, Jeff Smith stated, "I'm sorry that was the opinion though; it's really not right."

13) ORS 107.105 (1)(d)(c) states that if Plaintiff doesn't have any money, can't get a job and has health issues then a TCJ can't order

him to pay spousal support. However, this was illegally ordered in the final ruling of 21DR02783.

Plaintiff has been retired and out of the Job Market for 12 years. DLC and TCG were aware of this and ignored all of Plaintiff and his witnesses' testimony in the final ruling of 21DR02783. Plaintiff did not provide to the court a statement of facts (SOF) because the SOF in the Answering Brief are not facts. They are assertions supported by very little truthful testimony and exhibits.

## CONSULTATION WITH OREGON APPEALS COURT ATTORNEY, JEFF SMITH

This case may well be as much about proper methodology to utilize

to determine enhanced earning capacity as it is about the specifics

of this litigation. Particularly, it involves the proper manner in which

earning capacity should be determined and valued in a domestic

sense and the clarity to be employed by the trial court. The first

logical step in such a calculation is the recognition, preferably and

probably necessarily through expert testimony, of the raw figures

representing the enhanced earning capacity of the party in

question. This is exactly the approach that was used in Denton and

Denton (145 Or App 381, 930 P2d 239 (1996) (dissenting opinion of

Riggs, J., at 421-22)) This seems the only reasonable way to

perform the necessary calculations. However, the trial court did not

use this method. In this case, the trial court found that the case was

one calling for an award of spousal support without regard to

testimony by expert Christine Knutson which showed what investing

the $285,000 D received from the home split would give her a

monthly increase of over $1000 at only a 5% interest rate.

Christine Knutson also testified Plaintiff has only $78 a month in

disposable income and can't pay spousal support. DLC told over 65

untruthful statement the trial court believed without asking for proof.

The trial court did not consider Plaintiffs testimony nor any of his expert witness's testimony which is in the trail court transcripts which are now fixed. Oregon College Savings Plans for six grandchildren's. Both sets of parents make over $170,000 per year and started their own College Savings Plans. Therefore, the Grandchildren don't need this money.

Also D worked most of the marriage at Estate Sales and/or as a Nanny. She never put any money into the College Savings plans. Plaintiff put money in by himself. Plaintiff proposes to cash out these accounts and after taxes and penalties split the proceeds with Respondent by 8) Staveland and Fisher 15).

## **CONCLUSION**

In Oregon, an award of spousal support should be set on terms that are "...equitable between the parties that take into account need and ability to pay and that further the goal of ending the support-dependency relationship within a

reasonable time if that can be accomplished without justice or undue

hardship." see In re 9) Marriage of Grove, 280 Or. 341, modified on

denial of reh'g, 280 Or. 769 (1977). In considering what amount of

spousal support is just and equitable this Court has employed a

"range of reasonableness" test to measure the appropriate level of

support.  A support award is not justified if it is"...outside the 'range

of reasonableness by a significant enough margin so as not to be

just and equitable in the totality of pertinent circumstances.'" see In

re 10) Marriage of Cullen, 223 Or. App. 183 (2008). In the instant
matter,

it was proven at trial through previous expert testimony (Certified

Public Accountant) and testimony from  Plaintiff that Plaintiff is

unable to pay the amount of support awarded.  Moreover, the Court

failed to take in to account  Plaintiff's ability to pay as required by the

Grove decision.   Plaintiff was unemployed and continues to be

unable to obtain employment at previous levels.  This Court should

apply the correct standard and adjust the award of support

accordingly. This Court should also amend the division of property in

this matter.

Oregon law mandates that the allocation of property between spouses at the time of the divorce be "just and proper." 13) ORS 107.105(1)(f).  In the case of In re 11) Marriage of Kunze, 337 Or. 122 (2004), the Supreme Court of Oregon made clear that the trial court
must address what is just and equitable in an asset-by-asset approach. The Kunze decision instructs the courts to divide all "marital assets" pursuant to a presumption of equal contribution unless an asset was acquired by gift or inheritance.  This should mean, roughly, that all martial assets should be divided equally. Id. In the instant matter, the division of property was not implemented in a "just and proper" manner and was not equitable.  Plaintiff respectfully requests the Court reviews the trial court's decision and award in light of the Kunze decision and assure that the marital property of the parties is divided in an equitable fashion through mediation.

**PRAYER FOR RELIEF**

1.      Plaintiff hereby respectfully requests the Court to issue an order removing $84,000 from Plaintiffs' side of the ledger, which is only recorded there because of the 2) perjury of (D) and her witnesses.

2.      Plaintiff hereby respectfully requests the court to order D to refund $10,602.51 to Plaintiff's IRA.  This is based on $17,057.01(extra removed from IRA illegally) - $6454.50 (correct split of Grandkids' variable asset money) = $10,602.51 restored to Plaintiff's IRA.

3.      Plaintiff hereby respectfully requests the Court to order D to return all items from Defendant's Illegal Writ of Execution based on three Oregon laws broken by DLC and TCJ.

3. Plaintiff hereby respectfully requests the Court to order D to pay Spousal Support of $1000 per month to Plaintiff starting September1,

2022 until D's 70th birthday. It was unlawful for Judge Bailey, under Administrative Law to award Defendant spousal support due to his poverty status. On the other hand, it is perfectly reasonable for D to pay Plaintiff $1000 per month until she is 70 years of age.

4. Plaintiff hereby respectfully requests the Court to order D to write a letter to all our friends and tell them she was untruthful in stating that a doctor determined Plaintiff's guns were a marital asset because he was unfit to possess firearms.  She must also inform the gun destruction facility of this fact.

5. Plaintiff hereby respectfully requests the Court to follow the law (18 U.S.C. 4 and 7)   Judges Code of Conduct) for violations against D of 1) and 2) Perjury, and restitution to Plaintiff of $11,000.   Exhibit 11 is well documented 2) perjury of Julia White D.

6. Plaintiff hereby respectfully requests the Court to follow the law (18 U.S.C. 4 and 7)   Judges Code of Conduct) for violations against Tammy Davis of violations of 1) and 3). Exhibit 8 is well documented 2) perjury of Tammy Davis. Also, restitution to Plaintiff of $11,000

7. Plaintiff hereby respectfully requests the Court to follow the law (18 U.S.C. 4 and 7)   Judges Code of Conduct) for violations against David Smith and Jim Shipley of violations of 1), 2) and 3).  Exhibit 9 is David Smith well-documented 2) perjury with Jim Shipley as 18 USC 3 accessory after the fact. Also, restitution to Plaintiff of $22,000.

8. Plaintiff hereby respectfully requests the Court to use the new ruling which is based on transcripts and exhibits in the hearings. This is Exhibit 12.

9. Plaintiff hereby respectfully requests the court to Rule the Artic Fox camper, Lazy-Boy chairs and window coverings in Appellant's home are owned by Photlithography.net and not marital assets as DLC untruthfully claims. DLC said Plaintiff shouldn't have transferred the title of the camper to the company during the trial pendency. However, his client, D, took the monies from the wrecked Vibe payoff and reinvested it in a newer car. This, without consideration of

Plaintiff. The Vibe was a marital asset.

10.     Plaintiff hereby respectfully requests the court to rule that the IRA be split by the ending value of the IRA as a variable asset (end of divorce trial) valued at the time as 99,885.99. The Oregon Supreme Court in 8) Staveland and Fisher ruled this must be split equally at the of July 31st, 2022, with the account all in cash. Half is $99942.99. Thus, D illegally took $117,000 and must return $17,057.01 back to Plaintiff's IRA along with Grandkids college saving accounts. They must be split at the ending value dated August 1, 2022 when the IRA was valued just under $200.000.  D must transfer $13205.74 to Plaintiff's IRA. The Grandkids' total was 15,689.88 after withdrawals so we each get $6454.50 after paying federal and state taxes, To summarize, $17,057.01 - $6454.50 =$10,602.51 restored to Plaintiff's IRA.

11.     Plaintiff hereby respectfully requests the court to rule attorney fees for respondent are not valid because of untruthful non-provable statements made in trial by D's witnesses and DLC's more than 65 untruthful and non-provable statements in Trial Transcripts

12.     Plaintiff hereby respectfully requests the Court to Rule that the "bidding approach" utilized by the Trial Court is unlawful in that it is not based on fact established in the record. Since no real value was established for this property, the Court should remand this issue to the Trial Court to order mediation with Portland Mediators. Respondent must pay for this.

13.     Plaintiff hereby respectfully requests the Court to Rule Respondents' Legal Counsel made a minimum of 65 well-documented, untruthful statements in Court hearings and exhibits from May 3, 2021 to July 26, 2022.

14.     Plaintiff hereby respectfully requests the court to Rule Trial Court Judge and previous Trial Court Judge broke Oregon law ORS

13) 107.105 (1)(d)(c) Maintenance Spousal Support. Plaintiff has no Job to pay support and bad health. Therefore, Plaintiff can't be ordered to pay support.

15.     Plaintiff hereby respectfully requests the court to Rule D, who has at least $3000 a month in disposable income, must pay Appellant $1000 a month in support until she is 70 years old.

16.     Plaintiff hereby respectfully requests the court to Rule that the KeyBank account records for Climate Change Truth Inc., which are under a protection order, cannot be brought to the Court or mentioned in any pleading. Well-documented case facts are: D removed herself from Climate Change Truth Research Inc in September, 2017 and her shares were redistributed to remaining board members per the bylaws which are similar to Photolithography.net bylaws, in the exhibits. Both Plaintiff and D testified to this in Depositions and the Trial. D testified to this on the last day of the Trial.

17.     Plaintiff hereby respectfully requests the Court to Rule the motion submitted to Trial Court was illegal per Transcripts Page 132, Line 1-4

18.     Plaintiff hereby respectfully requests the Court to Rule the Personal Property Section of Exhibit 18, which D and Trial Court Judge signed must be completed.

19.     Plaintiff hereby respectfully requests the Federal Court to a ruling in this case which is well thought out, fair, and just. The Trial Court, with illegal Administrative Law and with the Appeals Court Administrative Law affirmation, gives D another $1048 a month and reduces Plaintiff to negative $970 a month income until the day he dies. The correct ruling gives Plaintiff $1078 a month in monthly disposable income until D is 70 years old. With D still having at least

$4000 a month in disposable monthly income from work and investments.

20.    Plaintiff hereby respectfully requests the Federal Court to require untruthful D to stop using his family's last name of White. She has tarnished it by her many untruthful statements. Furthermore,

21.    Plaintiff hereby respectfully requests the federal Court to vacate the administrative law ruling and final judgement in Oregon Family Court Washington County

22.    21DR02783, Plaintiff moves the Federal Court to vacate the Administrative Law erroneous opinion in Oregon Appeals Court A179571

All these charges are well-documented and supported in

21DR02783 transcripts and exhibits which will be uploaded to the

case after an IFP and e-access is requested and awarded.

Also any cost to the Plaintiff as the court see's fit

Fed. R. Civ. P. 4(e)". says (e)(1) "following state law for serving

a summons in an action brought in courts of general jurisdiction in the state

where the district court is located or where service is made; However, by

Oregon law email service is allowed. UTCR 9 G explains a

1  document may be a pleading or many other documents.

2

3  Plaintiff has filed lawsuits and other court filings in local courts, Oregon

4

5  Appeals Court and Oregon Supreme Court. There is no such thing in the

6

7  Oregon Court system as a summons. Defendants' Legal Counsel that live

8

9  in Oregon have no reasonable excuse for failing to realize that there

10

11  is no summons required in Oregon Court.

12

13
14  Respectfully.

15  10/07/2024

16

17  CERTIFICATE OF SERVICE

18  I hereby certify that on 10/7/2024, a true and correct copy of the above
19  document was paper filed with the Clerk of the Court using CM/ECF. A
20  copy of the document will be served upon interested parties via the Notices
21  of Electronic Filing that are generated by CM/ECF. Additionally, a courtesy
22  copy is being provided as follows:

23

24  Attorneys for Defendant Julia Annette Brentano Defendant (D)

1

2    Defendant Legal Counsel (DLC)

3    James Shipley, OSB 964279,

4    jtshipley@lygoshipley.com,

5    2233 NE 47th Ave. Portland,

6    OR 97213, 503-493-8383.

7    _XX Via hand delivery

8    ___ Via U.S. Mail, 1st Class,

9    Postage Prepaid

10    ___ Via Overnight Delivery

11    ___ Via Facsimile

12    XX Via Email

13    XX Via CM/ECF notification

14    to the extent registered DATED: 10/7/2024.

15    By: David White

16

17

18